186 So.2d 60 (1966)
CITY OF CORAL GABLES, a Municipal Corporation of Florida, Appellant,
v.
Janet V. JORDAN and Janet V. Jordan, As Administratrix of the Estate of John Ellison Jordan, a Minor, Deceased, Appellee.
No. 65-315.
District Court of Appeal of Florida. Third District.
May 3, 1966.
Rehearing Denied May 24, 1966.
Edward L. Semple, Coral Gables, Mallory H. Horton, Miami, for appellant.
Nichols, Gaither, Beckham, Colson & Spence and Aaron Podhurst and Robert Orseck, Miami, for appellee
Before HENDRY, C.J., and PEARSON and SWANN, JJ.
PER CURIAM.
This is an appeal by the defendant, the City of Coral Gables, from a final judgment entered on a verdict for the plaintiff in the sum of $100,000 in an action arising out of an automobile-motor scooter collision.
*61 As a result of the collision and the alleged wrongful death of John Ellison Jordan, his mother, Janet V. Jordan, individually, and as administratrix of his estate, sued the defendant for damages predicated upon the negligence of a police officer of the defendant.
John Jordan and one Robert Lee Bell, were students at Coral Gables High School. On September 9, 1963, during the noon luncheon recess, Jordan sustained fatal injuries when a motor scooter upon which he was riding as a passenger collided with an automobile at the intersection of Le Jeune Road and Altara Avenue. At the time of the accident, the decedent was returning to school from lunch. He was seated on the passenger seat of the motor scooter, directly behind the operator, Bell.
Le Jeune Road runs north and south and has two lanes for northbound traffic and two lanes for southbound traffic. Altara Avenue runs east and west and forms a "T" intersection with Le Jeune Road. The scooter was proceeding northward on Le Jeune Road, in the eastern or outside lane, a short distance behind a northbound car. As the scooter approached Altara Avenue, the car ahead signalled for a right hand turn and executed the turn into Altara Avenue. Bell testified that he slowed down to approximately 15 to 20 miles per hour to allow the car ahead to make the turn and then proceeded on into the intersection. He did not see a police officer or anyone in the intersection.
A car, which had been stopped, facing west on Altara was signalled into the intersection, directly into the path of the oncoming scooter, by a Coral Gables police officer. The collision occurred, and Jordan was thrown from the scooter and killed. The officer, prior to signalling the car out of Altara, had stopped a northbound car in the western or inside lane of Le Jeune Road and was standing about five or six feet north of the right front wheel of that car. The officer testified that after signalling the car out of Altara he looked up and saw the motor scooter about 125 to 150 feet away. He put up his hand for the scooter to stop and when it did not, he raised his other hand, but the scooter came on and collided with the automobile which he had signalled into the intersection.
The appellant has argued three points on appeal. The first two present the same question:
"Is evidence of defendants' settlement with a third party in the same accident so prejudicial to the defendant as to require a mistrial or in the alternative, a new trial."
On the basis of the pleadings, it is evident that the defendant, appellant, was relying strongly upon a showing that plaintiff's decedent met his death through the negligence of the operator of the motor scooter, and that this negligence was the sole proximate cause of the collision. The operator of the motor scooter (Robert Lee Bell) was subpoenaed and placed on the stand by the plaintiff, appellee. He was interrogated by appellee's counsel as to what transpired before and at the time of the collision.
The record discloses that defense counsel, on cross-examination of Bell, asked the following questions:
"Q Your father investigated this accident pretty thoroughly initially did he not?
"A Yes, sir; I believe so.
"Q He took a lot of statements from people?
"A Yes, sir.
"Q Did your father take a statement from Mrs. Metzer?
"A Yes, sir.
"Q Did your father take a statement from Miss Prather?
"A Yes, sir.
"Q Have you seen those statements?
"A Yes, sir."
*62 Subsequently, upon redirect examination, counsel for the plaintiff asked the following question:
"Q Bill, at the present time you and your father have no interest in this law suit. All claims have been settled with the City of Coral Gables"
"A Yes, sir, as far as I know."
Thereupon, in the absence of the jury, the defendant moved for a mistrial, and the trial court denied the motion.
Section 54.28, Fla. Stat.[1], F.S.A. prohibits the revelation to the jury of a settlement by an injured party with one of several tort feasors. See Hertz Corp. v. Hellens, Fla.App. 1962, 140 So.2d 73. It would seem to be just as damaging to a fair trial to permit the injured party to reveal to the jury that the alleged tort feasor has settled with another injured party in the same accident. Cf., Annot. at 161 A.L.R. 395. See also Annot. at 20 A.L.R.2d 304.
On this appeal, the appellee does not argue that the evidence of the settlement would be initially admissible, but it is urged that the appellant, by his own questions, opened the door on this point. This reasoning was the basis of the trial judge's decision denying the subsequent motion for a mistrial. He ruled that the only reason that appellant could have had for asking on cross examination the questions concerning the investigation of the accident by the witness' father was to indicate to the jury that the witness might have some interest in the litigation. Having reached this conclusion, he held the evidence of the settlement admissible to rebut the existence of interest in the litigation.
There appears to be no logical relationship between the interrogation of Bell concerning his father's investigation of the accident and the settlement by Bell and his father of their claims against the appellant. The information brought out on cross-examination, that Bell's father had taken statements of witnesses, was not relevant to any issue, but we need not decide whether the cross examination was proper because no objection was made.
The inquiry follows: Was the cross examination as to the taking of witnesses' statements prejudicial to the appellee, plaintiff? We think it is apparent that: (a) the information revealed was not prejudicial to the plaintiff at that stage of the trial; (b) it might have become prejudicial to the plaintiff at some subsequent stage of the trial if and when other information was revealed to the jury. The cross-examination was not prejudicial at the time the questions relating to the taking of statements were asked because the jury already knew that Bell had been involved in the accident. The taking of statements, without more information, indicated nothing except an involvement and a natural concern.
Upon the other hand, the knowledge of the settlement by the driver with the defendant was immediately and completely destructive to the possibility of a fair trial between the plaintiff and the defendant. Every juror knew that plaintiff's witness, Bell, was the driver of the motor scooter, and that appellant, defendant, intended to *63 show that the deceased had met his death solely through the negligent acts of Bell. In this atmosphere, when the jury became aware that the city had settled the claims of Bell and his father, appellant's defense that Bell was the sole cause of the accident evaporated.
We recognize that the decisions in our sister states are not uniform and that there is respectable authority to the contrary.[2] However, in the absence of controlling precedent, we must adopt that rule which is in accordance with reason and justice. The public policy of this state favors amicable settlement of disputes and the avoidance of litigation.[3] This policy is implemented by excluding evidence of an offer to compromise[4] and a release or covenant not to sue tort feasors.[5] In commenting upon a similar policy in Fenberg v. Rosenthal, 348 Ill. App. 510, 109 N.E.2d 402, at page 405 (1952), the Illinois Court stated:
"* * * our courts are firmly committed to the principle that offers of compromise or settlements with third persons are not admissible. Plaintiff cites authority to the contrary * * * We have examined the cases cited. All are cases where verdicts were affirmed notwithstanding the admission of such testimony; none where the exclusion of such testimony was held error. In each of these cases the courts have been careful to point out that the jury was instructed that evidence of the offer of compromise was admitted solely upon the question of the credibility of the witness and not on the question of liability. We think, however, that such reasoning is not realistic, for, as pointed out in the cases committed to contrary doctrine, it is a practical impossibility to eradicate from the jury's minds the consideration that where there has been a payment there must have been liability. We see no reason to depart from our former ruling in the Jacobson case. We are of the opinion that the more substantial authority supports the conclusion that the rule permitting payments to a witness to be shown for the purpose of determining whether such payments affect credibility must yield to the public policy inherent in the other rule that offers of compromise and settlement with third persons may not be shown except under unusual circumstances. Such unusual circumstances exist where some species of fraud or other questionable practice is indulged in to procure or influence such testimony. If such claim is made the trial court should hear testimony of the alleged misconduct out of the presence of the jury and rule on a motion to strike, preliminary to the testimony being offered in evidence. However, no such unusual circumstances are found or claimed to be present in the instant case."
We hold that the trial judge erroneously held that the appellant had opened the door and rendered the evidence of settlement admissible.
In view of the fact that this cause may be retried, it is proper for us to express our views upon appellant's second point because that point concerns an issue which will in all probability again be presented to the trial court.
The defendant's second point on appeal is that it was reversible error to direct a verdict in favor of the plaintiff on the issue of contributory negligence, because there was evidence from which the jury could conclude that the decedent was guilty of some negligence. The basis for this contention is that one witness testified he observed the decedent on the motor scooter holding a plastic cup in one hand prior to *64 and some blocks from the scene of the accident. Another witness testified that he saw a paper drinking cup lying in the roadway at the scene of the accident. This circumstantial evidence will not support a jury inference of contributory negligence because it is purely speculative and, therefore, inadequate to produce an inference that outweighs all contrary or opposing inferences.[6]
Having reached the conclusion that reversible error was committed and that appellant's motion for new trial should have been granted thereon, we reverse the judgment and remand the cause with directions to grant defendant's motion for a new trial.
Reversed and remanded.
HENDRY, Chief Judge (dissenting).
I respectfully dissent from the holding of the majority, "[T]hat the trial judge erroneously held that the appellant had opened the door and rendered the evidence of settlement admissible."
The trial judge stated that he could see no relevancy to the questions on cross-examination concerning the investigation of the accident by the witness' father other than to indicate to any reasonable man sitting on the jury that the witness might have an interest in the litigation. Since the defendant "opened the door" on this point the court ruled it was proper on redirect to bring out that the witness had no adverse interest.
The question to be resolved is not whether such evidence is admissible as an admission of liability but whether it is admissible for the purpose of rehabilitating the credibility of a third person as a witness.
Testimony is admissible on redirect examination which tends to qualify, limit or explain testimony elicited on cross-examination.[1] Therefore, if the testimony elicited on cross-examination did, by inference, affect the credibility of the witness indicating an interest in the litigation, the plaintiff may in the discretion of the court rebut this on redirect examination. The trial judge is in a better position than this court to evaluate the effect of evidence upon the jury. His determination in the instant case that the testimony elicited by the defendant on cross-examination affected the credibility of the witness is supported by the record. There are many cases which support the general principle that evidence of a settlement is admissible when elicited from an adversary witness for the purpose of showing a fact from which an inference of interest or bias may be drawn which would reflect upon the credibility of the witness.[2] While there are few cases which have determined whether such evidence is admissible when elicited from a party's own witness on redirect, the Missouri Supreme Court has thoroughly examined this issue in Johnson v. Minihan, 355 Mo. 1208, 200 S.W.2d 334 (1947). The court therein stated at 336:
"Where the one party, on cross-examination of a witness, opens up a line of inquiry which is designed to discredit the witness in the eyes of the jury, the courts go very far, * * * in permitting the other party, on redirect examination, to bring out those aspects of the matter which are favorable to the witness, even though, without the foundation afforded by the cross-examination, the evidence thus brought out would be wholly unjustifiable."
The court went on to state that the scope and extent of redirect examination is left *65 largely to the sound discretion of the trial court and its ruling will not be disturbed unless an abuse of discretion is clearly shown. The court concluded that while disclosure of a settlement is normally incompetent such disclosure would be subordinate to the party's right to rehabilitate the witness, and the adversary is restricted to a request for an appropriate limiting instruction.
I am in accord with the above expression of the Supreme Court of Missouri and would hold that the trial judge exercised sound discretion in allowing the plaintiff on redirect to rehabilitate the witness from the effect of the testimony elicited by the defendant on cross-examination, and in denying defendant's motion for a mistrial.
Therefore, I would affirm the judgment appealed.
NOTES
[1] Release or covenant not to sue.

(1) A release or covenant not to sue as to one tort-feasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tort-feasor who may be liable for the same tort or death.
(2) At any trial, if any defendant shall make it appear to the court that the plaintiff, or any person lawfully on his behalf, has delivered a release or covenant not to sue to any person, firm or corporation in partial satisfaction of the damages sued for, the court shall, at the time of rendering judgment, set-off such amount from the amount of any judgment to which the plaintiff would be otherwise entitled and enter judgment accordingly.
(3) The fact of such a release or covenant not to sue, or that any defendant has been dismissed by order of the court, shall not be made known to the jury.
[2] See text and cases cited in 4 Wigmore, Evidence § 1061; 31A C.J.S. Evidence § 286.
[3] See Russell v. Shelby Mutual Insurance Co., Fla.App. 1961, 128 So.2d 161: Fla. Stat. § 54.28, F.S.A.
[4] Martin v. Johns, Fla. 1955, 78 So.2d 398.
[5] Fla. Stat. § 54.28, F.S.A.
[6] Food Fair Stores, Inc. v. Trusell, Fla. 1961, 131 So.2d 730.
[1] Tampa Electric Co. v. Charles, 69 Fla. 27, 67 So. 572 (1915). See also; 3 Wigmore, Evidence § 952 (3d Ed. 1940); McCormick, Evidence, §§ 32, 49 (1954); 98 C.J.S. Witnesses §§ 564, 571.
[2] Keet v. Murrin, 235 App.Div. 882, 256 N.Y.S. 1021, aff'd 260 N.Y. 586, 184 N.E. 104 (1932), Annot., 161 A.L.R. 395 (1946).