PER CURIAM.
We have for review the decision of the Fourth District Court of Appeal in Saleeby v. Rocky Elson Construction, Inc., 965 So.2d 211 (Fla. 4th DCA 2007), review granted, 977 So.2d 577 (Fla.2008), which expressly and directly conflicts with the decision of the Third District Court of Appeal in Ellis v. Weisbrot, 550 So.2d 15 (Fla. 3d DCA 1989). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. Both sections 768.041 and 90.408, Florida Statutes (2006), prohibit the admission at trial of any evidence of settlement or dismissal of a defendant. The issue we decide is whether evidence of settlement may nevertheless be admitted to impeach a witness’s testimony. We hold that the unambiguous language of these statutes admits no exceptions and that violation of the prohibition is reversible error. For the reasons explained below, we quash the Fourth District’s decision.
I. FACTS AND PROCEDURAL HISTORY
In December 1999, the petitioner, Albert Saleeby, was injured when roof trusses on the construction site at which he was working collapsed on him, rendering him a paraplegic. After collecting workers’ compensation benefits from his employer, Labor for Hire, a company that supplies temporary workers, Saleeby filed a negligence action against Rocky Elson Construction Co. (Elson), the construction company that installed the trusses, and A-lRoof Trusses Ltd. (A-1), the company that manufactured them.
Before trial, Saleeby deposed defendant A-l’s president, John Herring, regarding his review of the jobsite and his opinion of the cause of the truss collapse. Subsequently, A-l settled with Saleeby and was dismissed as a party defendant. Saleeby then filed a motion in limine to exclude evidence at trial of A-l’s prior status as a defendant and of the settlement. The trial court entered an “Agreed Order,” stating that Saleeby and Elson agreed to the exclusion of any evidence of settlement, settlement amounts, and A-l’s previously having been a defendant in the suit.[1]
The suit proceeded to jury trial against Elson on the sole issue of liability, and Elson raised the affirmative defense of workers’ compensation immunity. Saleeby sought to show that the collapse resulted from Elson’s failure to follow safety requirements and industry standards in installing the trusses, particularly as to adequate bracing. To that end, Saleeby called John Herring, who testified regarding his observations of the accident site and what caused the trusses to collapse. He opined that the truss collapse resulted from Elson’s faulty installation, not a manufacturing defect. The trial court overruled Elson’s objection that Herring, who was offered as a fact witness, should be *1081 prohibited from testifying essentially as an expert witness on industry building standards and code requirements and Elson’s conformity to them. However, the trial court granted Elson’s motion that it be allowed to impeach Herring with evidence that A-l had previously been a defendant and had settled with Saleeby. After hearing argument, the circuit court determined that the evidence went to the witness’s bias because Herring’s trial testimony was based on the opinions he formulated when A-l was a defendant in the case. Accordingly, during cross-examination, Herring admitted that A-l had previously been a defendant in the lawsuit, that money was paid to settle the suit, and that Herring had subsequently agreed to testify for Sa-leeby. After hearing all of the evidence at trial, the jury found that Saleeby was not entitled to recover damages from Elson because the company was immune from liability in tort under Florida’s workers’ compensation statute. See § 440.11(1), Fla. Stat. (1999).
In his appeal to the Fourth District, Saleeby argued, as he did in the trial court, that sections 768.041 and 90.408, Florida Statutes (2006), prohibited the admission of evidence of settlement and that violation of these statutes is clear reversible error. The district court, however, held that the trial court did not abuse its discretion in admitting the evidence because “Herring had first rendered this opinion when he was a defendant with a pecuniary interest in the case.” Saleeby, 965 So.2d at 215. The Fourth District reasoned as follows:
Section 90.408 excludes evidence of a settlement to prove liability; courts may, however, admit settlement-related evidence if offered for other purposes, such as proving witness bias or prejudice. See Dosdourian v. Carsten, 624 So.2d 241, 247 n. 4 (Fla.1993) (evidence of a settlement with a codefendant who remained in the case was admissible since “the jury was entitled to weigh the codefendant’s actions [at trial] in light of its knowledge that such a settlement has been reached.”). Section 90.408 was enacted to protect against the prejudicial effect that settlement evidence may have on a jury. However, when settlement evidence goes to a witness’s “motivation[ ], interest, and position” the probative value of such proof of bias outweighs the danger of prejudice. See Ehrhardt, Florida Evidence § 408.1, Fla. Stat. (2003 ed.) (citing Dosdourian, 624 So.2d at 241; § 90.403, Fla. Stat. (2006)). A witness’s bias or improper motive is always an important factor to a jury’s credibility determination. See Russ v. City of Jacksonville, 734 So.2d 508, 511 (Fla. 1st DCA 1999).
Here, A-l Roof Trusses had a financial stake in the matter which could have impacted its president’s expert opinion. Evidence of the prior settlement was properly admitted to show potential bias.
Saleeby, 965 So.2d at 215-16. Thus, finding no merit in this or any of Saleeby’s other claims, the district court affirmed the adverse judgment in the case.
II. CONFLICT JURISDICTION
Saleeby petitioned this Court for review, alleging express and direct conflict with Ellis v. Weisbrot, 550 So.2d 15 (Fla. 3d DCA 1989), regarding the admissibility of evidence of settlement at trial to demonstrate the bias of a testifying witness.[2] As *1082 explained below, these cases are in express and direct conflict regarding the admissibility of evidence of settlement at trial to demonstrate the bias of a testifying witness, and this Court has jurisdiction. See art. V, § 3(b)(3), Fla. Const.
In Ellis, Darryl Ellis sued Jefferson Stores, Inc., and Drs. Kirsner and Weis-brot for dental malpractice. Ellis voluntarily dismissed Dr. Kirsner in return for a waiver of fees and costs but nevertheless called him as a witness at trial. Id. at 16. During cross-examination, Dr. Kirsner admitted that he had previously been a defendant in the case. Id. The trial court denied Ellis’s immediate motion for mistrial and Ellis’s objections to defense counsel’s continual references to Dr. Kirsner’s former party defendant status throughout the cross-examination. On appeal, the Third District reversed the jury verdict and remanded for a new trial. Id. Citing section 768.041’s prohibition on informing a jury that a witness was a prior defendant in the case, the district court held that “[ajdmission of such testimony, even to attack the former defendant’s credibility, is clear error and requires reversal.” Id.
In both cases, the plaintiff dismissed a defendant from the case and then called the former defendant to testify. In both cases, the trial court permitted the remaining defendant in the case to use evidence of the witness’s former party status to impeach the witness in contravention of a statute. Finally, in both cases, the district courts were presented with the same question of law regarding the admissibility of such evidence to impeach a witness, but they reached opposite conclusions. The Fourth District found no error and held that despite a statutory prohibition, the evidence was admissible to show witness bias, Saleeby, 965 So.2d at 216, but the Third District held that admission of such evidence to demonstrate witness bias was “clear error,” requiring reversal. Ellis, 550 So.2d at 16.
III. ANALYSIS
Petitioner argues that the trial court’s admission of evidence of settlement violated clear statutory law barring such admission for any purpose. Respondent contends, however, that an unwritten exception to the prohibition applies to the facts of this case. As we explain below, the question of whether evidence that a previous defendant settled out of a lawsuit is admissible for purposes of impeachment is readily answered by reading the plain language of the applicable statutes.
“It is well settled that legislative intent is the polestar that guides a court’s statutory construction analysis.” Knowles v. Beverly Enterprises-Flu., Inc., 898 So.2d 1, 5 (Fla.2004). Thus, to determine the meaning of a statute, we first look to its plain language. McKenzie Check Advance of Fla., LLC v. Betts, 928 So.2d 1204, 1208 (Fla.2006). When the statute is clear and unambiguous, “there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.” Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)).
 Two Florida statutes specifically address the issue of disclosing evidence of settlement to the jury. Section 768.041, Florida Statutes (2006) provides as follows:
(1) A release or covenant not to sue as to one tortfeasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort or death.
*1083 (2) At trial, if any defendant shows the court that the plaintiff, or any person lawfully on her or his behalf, has delivered a release or covenant not to sue to any person, firm or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.
(3) The fact of such a release or covenant not to sue, or that any defendant has been dismissed by order of the court shall not be made knoivn to the jury.
(Emphasis added.) The meaning of paragraph (3) of the statute could not be clearer. The statute plainly and unambiguously prohibits disclosure to the jury of any evidence of settlement or that a former defendant was dismissed from the suit. Similarly, another statute provides:
Evidence of an offer to compromise a claim toldch was disputed as to validity or amount, as well as any relevant conduct or statements made in negotiations concerning a compromise, is inadmissible to prove liability or absence of liability for the claim or its value.
§ 90.408, Fla. Stat. (2006) (emphasis added). The meaning of this statute is equally clear. No evidence of settlement is admissible at trial on the issue of liability.
These statutes promote Florida’s public policy favoring settlement by excluding such prejudicial evidence at trial. See City of Coral Gables v. Jordan, 186 So.2d 60, 63 (Fla. 3d DCA), aff'd, 191 So.2d 38 (Fla.1966). The Fourth District acknowledged this purpose in Saleeby but nevertheless carved out an exception where the evidence is “offered for other purposes, such as proving witness bias or prejudice.” Saleeby, 965 So.2d at 215. The district court erroneously cites our decision in Dosdourian v. Carsten, 624 So.2d 241 (Fla.1993), as supportive of this principle.
In Dosdounan, we answered a certified question regarding whether a nonsettling defendant may inform the jury that the plaintiff reached a settlement with another defendant who was required to continue to participate in the law suit. Dosdourian, 624 So.2d at 242. Dosdourian introduced the settling defendant’s deposition at trial, but she did not testify. Further, Carsten’s motion to dismiss her as a defendant was denied. The factual scenario was closely akin to a so-called “Mary Carter Agreement,” which we previously had held should be disclosed to the jury. See Ward v. Ochoa, 284 So.2d 385 (Fla.1973).[3] Before addressing the question, we first reconsidered the validity of Mary Carter Agreements and described a litany of unfair and unethical practices fostered by such agreements, including that they require lawyers to “make misrepresentations to the court and to the jury in order to maintain the charade of an adversarial relationship.” Dosdourian, 624 So.2d at 244. Further, we acknowledged that our solution in Ward of requiring disclosure of *1084 such agreements to the jury “can be a double-edged sword to the extent that it conveys a message to the jury that at least one of the defendants felt that the plaintiffs claim was meritorious.” Dosdourian, 624 So.2d at 245. Accordingly, to “eliminate the sinister influence” of such agreements we “outlaw[ed] their use” and “include[d] within our prohibition any agreement which requires the settling defendant to remain in the litigation, regardless of whether there is a specified financial incentive to do so.” Id. at 246.
Because our prohibition of Mary Carter Agreements was prospective in nature, we necessarily addressed the facts in Dos-dourian “upon the premise that the settlement agreement was legal” under our prior precedent. Id. Carsten had sued DeMario and Dosdourian in negligence but settled with DeMario before trial and required that she remain a defendant participating in the litigation. Id. at 242. The trial court ruled that evidence of settlement could not be disclosed to the jury. On review here, Carsten argued that evidence of the settlement agreement fell within section 768.041(3)’s prohibition on disclosure of settlements to the jury, and Dosdourian countered that “the jury was still misled by not knowing that Carsten had settled his claim against DeMario while DeMario remained in the litigation.” Id. at 247. We determined that the settlement agreement in the case requiring the defendant to continue to participate fell within “the ‘Mary Carter’ line of cases” that required disclosure to the jury. We further explained the prejudice in such a situation as follows:
[Ejven though a defendant may be required to remain in the litigation, once that defendant has agreed to settle there is simply no longer any incentive to actively defend the case. In fact, it is no longer even in the settling defendant’s interest to put forth further effort or incur additional expense in the litigation. Simple inaction on the part of one defendant can adversely affect the code-fendaoit.
Id. (emphasis added). Then, in a footnote, we added that “where, as here, there was a settlement, the jury was entitled to weigh the codefendant’s actions in light of its knowledge that such a settlement has been reached.” Id. at 247 n. 4. The Fourth District cited this footnote to support its determination of an exception to the prohibitory statutes at issue here.
As should be apparent from the foregoing discussion, our decision in Dosdourian addressed an entirely different situation than the one presented here. We did not apply section 768.041(3), nor did we create an exception to it. We expressly found the settlement agreement requiring the defendant to remain and participate in the litigation was a Mary Carter style agreement, subject to our prior requirement of disclosure. In Dosdourian, however, we completely prohibited the use of such agreements prospectively. Accordingly, our decision requiring admission of settlement evidence in Dosdourian in no way permits the evidence of settlement to be entered in this case. In the case on review, the settling defendant was dismissed from the case and did not continue to participate as a defendant in the case. None of the concerns of fraud and unethical conduct propagated by Mary Carter Agreements are present here. Rather, the facts of the case fall entirely within the purview and prohibitions of sections 768.041 and 90.408.
As stated previously, these statutes promote Florida’s public policy to encourage settlement. Although factually distinguishable from this case, Jordan demonstrates the prejudice that results from the erroneous admission of evidence of settlement. There, a passenger on a motor scooter was killed when it collided with an *1085 automobile at an intersection where a city-police officer was directing traffic. Jordan, 186 So.2d at 61. The decedent’s mother sued the city. At trial, the city sought to show that the death resulted solely from the negligence of the scooter’s operator. The plaintiff called the driver to testily and during redirect elicited testimony that the city had settled with him to show that the witness had no interest in the litigation. Id. at 61-62. Citing the predecessor statute to section 768.041, the district court stated:
Section 54.28, Fla. Stat., F.S.A. prohibits the revelation to the jury of a settlement by an injured party with one of several tort feasors. It would seem to be just as damaging to a fair trial to permit the injured party to reveal to the jury that the alleged tort feasor has settled with another injured party in the same accident.
Id. at 62 (footnote and citation omitted).[4] The Third District explained that informing the jury of the settlement in the case was “immediately and completely destructive to the possibility of a fair trial between the plaintiff and the defendant.” Id. Accordingly, the appellate court found that admission of the evidence of settlement was reversible error and remanded for new trial. Id. at 64.
Jordan and other cases fully illustrate the prejudice that results when sections 768.041 and 90.408 are violated: “[I]t is a practical impossibility to eradicate from the jury’s minds the considerations that where there has been a payment there must have been liability.” Jordan, 186 So.2d at 63 (quoting Fenberg v. Rosenthal, 348 Ill.App. 510, 109 N.E.2d 402, 405 (1952)); see, e.g., Ricks v. Loyola, 822 So.2d 502, 508 (Fla.2002) (affirming trial court’s grant of new trial where counsel made an “empty chair” argument implying a settlement was reached with others); Muhammad v. Toys “R” Us, Inc., 668 So.2d 254, 256 (Fla. 1st DCA 1996) (reversing and remanding for new trial where counsel’s arguments suggesting a settlement with others were “patently prejudicial and may have influenced the jury to return a verdict in favor of Toys ‘R’ Us”); Henry v. Beacon Ambulance Serv., Inc., 424 So.2d 914, 916 (Fla. 4th DCA 1983) (reversing and remanding for new trial where disclosure of settlement to jury violated section 768.041(3)).
From the foregoing discussion, it is clear that violation of sections 768.041 and 90.408 is reversible error. To escape the consequence of this conclusion, respondent attempts to distinguish this case. Respondent argues (1) that any error in this case was invited, and (2) that the statutes are not violated if the former defendant is called to testify as an expert witness. We address these arguments in turn.
As explained previously, Saleeby obtained an agreed order to prohibit admission of any evidence of settlement or former defendant status. Subsequently, however, the trial court reversed itself, ruling such evidence admissible. The trial court agreed, however, that Saleeby’s objection was not waived if he chose to minimize the impact of the evidence by admitting it himself. Accordingly, on direct examination, counsel for Saleeby elicited from Herring the fact that A-l was a party to the case at the time he gave his deposition. Then, on cross-examination, Herring admitted that A-l had paid to settle with Saleeby and had been dismissed as a defendant. As is clear from our decision in Sheffield v. Superior In *1086 surance Co., 800 So.2d 197 (Fla.2001), Saleeby did not waive his objection, and his presentation of the contested evidence did not constitute invited error. See Sheffield, 800 So.2d at 203 (“We hold that once a trial court makes an unequivocal ruling admitting evidence over a movant’s motion in limine, the movant’s subsequent introduction of that evidence does not constitute a waiver of the error for appellate review.”).
Second, Elson claims that sections 768.041 and 90.408 do not apply when the former defendant testifies as an expert witness for the plaintiff. In this case, Herring was called as a fact witness. The trial court overruled Elson’s objection that 'Herring was testifying essentially as an expert witness by opining about code requirements and the cause of the accident. The circuit court, however, allowed Elson to impeach Herring with evidence of the settlement. We find that the plain language of the statutory provisions at issue here do not prohibit the admission of evidence based on how the evidence comes in. That is, the prohibition is not imposed only on witnesses or categories of witnesses. The statutes instead expressly prohibit the facts from being transmitted to the jury at all. Accordingly, we reject Elson’s proposed expert witness exception to these statutes. Based on our previous discussion, we also reject without further discussion Elson’s attendant suggestion that Dosdourian required the disclosure.
IV. CONCLUSION
As explained above, we find that the plain language of sections 768.041(3) and 90.408 expressly prohibits the admission at trial of evidence of settlement and that a defendant has been dismissed from the suit. These statutes do not contain an implicit exception permitting such evidence to be used for impeachment purposes, and the district court erroneously relied on our opinion in DosdouHan in finding one. Accordingly, we quash the Fourth District’s decision in this case and remand with directions that petitioner be granted a new trial. We approve the Third District’s decision in Ellis.
It is so ordered.
QUINCE, C.J., PARIENTE and LEWIS, JJ., and ANSTEAD, Senior Justice, concur.
CANADY, J., dissents with an opinion.
POLSTON, J., dissents with an opinion, in which WELLS, J., concurs.

. Saleeby originally named the general contractor, Tektonica-USA, Inc., as another defendant in the suit. Saleeby, however, also settled with this contractor, and both Salee-by’s motion in limine and the trial court's order included prohibition of admission of these facts at trial.

. Besides the conflict issue, Saleeby raises other issues in his brief. Although we have jurisdiction, we have determined to not address them. See State v. T.G., 800 So.2d 204, 210 n. 4 (Fla.2001) (”[O]nce the Court grants jurisdiction, it may, in its discretion, address other issues properly raised and argued before the Court.”).

. We described a "Mary Carter Agreement” as follows:
A "Mary Carter Agreement,” however, is basically a contract by which one co-defendant secretly agrees with the plaintiff that, if such defendant will proceed to defend himself in court, his own maximum liability will be diminished proportionately by increasing the liability of the other co-defendants. Secrecy is the essence of such an arrangement, because the court or jury as trier of the facts, if apprised of this, would likely weigh differently the testimony and conduct of the signing defendant as related to the non-signing defendants. By painting a gruesome testimonial picture of the other defendant's misconduct or, in some cases, by admissions against himself and the other defendants, he could diminish or eliminate his own liability by use of the secret "Mary Carter Agreement."
Ward, 284 So.2d at 387.

. Section 54.28, Florida Statutes (1963), was subsequently renumbered as section 768.041 and amended.