ON APPELLEE/CROSS-APPELLANT’S MOTION FOR REHEARING AND CERTIFICATION

OSTERHAUS, J.
This case arises from the construction of the new airport that opened in Panama City in 2010. After the airport was in operation, a stormwater retention pond had to be reconstructed at a cost of millions of additional dollars because improper-sized sand was installed in the pond. Legal claims multiplied between those with a hand in the project — the airport district, its construction management contractor, the pond’s designer, and the construction company — involving the pond and other drainage, grassing, and sodding work. And though much was settled short of trial, the Panama City-Bay County Airport and Industrial District (“Airport”) *1114 and construction management contractor Kellogg Brown • & Root Services, Inc. (“KBR”), ultimately went to trial. KBR prevailed after assailing the Airport’s witnesses and case at trial on the basis of a settlement agreement the Airport had entered with the construction company. The Airport objected below to having its settlement agreement made known to the jury and now makes a convincing argument on appeal for reversal, remand, and a new trial because the agreement should not have been disclosed.
I.
In 2007, the Airport entered into contracts for the design, oversight, and construction of the Northwest Florida Beaches International Airport in Panama City. The Airport hired Atkins North America, Inc. (“Atkins”) to design plans and specifications for construction of the “horizontal” works of the airport (site preparation, drainage, and paving); contracted with Appellee KBR to perform construction and program management and oversight services; and awarded the prime construction contract to Phoenix Construction Services, Inc. (“Phoenix”).
This appeal mainly involves the construction of a retention pond at the airport site. Plans called for the construction of “Pond C,” an approximately 50-acre stormwater pond that collected and treated water draining from over 1000 acres of the airport site. The pond’s ability to drain water, its permeability, was a critical performance metric dictated by longstanding Florida Department of Environmental Protection (“DEP”) regulations. DEP required that sands installed in the pond be certified as meeting a minimum grain size. But in the course of construction, noncompliant, small-sized sand was installed in the pond. For this reason, the pond had to be reconstructed at an additional cost of over $5.5 million.
Claims and recriminations abounded regarding Pond C and other work at the site. Phoenix sued the Airport for breach of contract and Atkins for professional negligence. The Airport, seeking to recover the additional $5.5 million from Phoenix, Atkins, and/or KBR, asserted counterclaims for breach of contract, bond, and indemnity against Phoenix; crossclaims for professional negligence, breach of contract, and indemnity against Atkins; and third-party indemnity, contract, and negligence claims against KBR. In turn, KBR brought third-party counterclaims for indemnity and breach of contract against the Airport.
As the litigation progressed, the parties resolved a great deal short of trial. In January 2012, the Airport and Phoenix entered a settlement agreement fully releasing one another. Among other things, the Airport admitted liability and liquidated its damages to Phoenix in return for a share of any recovery from the continuing litigation. They also agreed to cooperate in the remaining litigation using a common law firm compensated by Phoenix in addition to the Airport’s own counsel. But they clarified that each was to retain ownership and control of its own claims and could settle its claims independently. In fact, after the Airport and Phoenix settled, each also settled their claims with Atkins.
The only claims remaining by the time of trial were the Airport’s third-party breach of contract and professional negligence claims against KBR; and KBR’s third-party counterclaim for breach of contract and indemnity arising from unpaid invoices. Before trial, the Airport filed a motion in limine to exclude evidence of Phoenix’s settlement offer and of the Airport-Phoenix settlement agreement itself. The trial court granted the motion as to *1115 the terms of the settlement offer, but allowed the settlement agreement to be disclosed to the jury. KBR made the settlement agreement known to the jury and referred to it repeatedly to discredit the Airport’s case and to bolster its own counterclaims. The views KBR expressed at trial were that the settlement agreement showed the Airport’s case to be “not about the pursuit of truth [but] of money,” and amounted to Phoenix “invest[ing] in a lawsuit.”
The jury returned verdicts for KBR, both rejecting the Airport’s breach of contract and negligence claims and ruling for KBR on its counterclaim and assessing damages at more than $360,000, the amount of the unpaid invoices. The Airport moved for a new trial citing the improper disclosure of its settlement agreement (among other things); but its motion was denied. It then timely appealed, but did not appeal the judgment on KBR’s crossclaims. KBR also cross-appealed.
II.
A.
As a threshold matter, we must address the mootness issue that KBR has raised which implicates this court’s jurisdiction. KBR argues that the Airport’s appeal is moot because it has failed to appeal the judgment on KBR’s counterclaim. The essence of KBR’s argument is that the jury defacto decided the Airport’s direct claims by rejecting similar-sounding affirmative defenses that the Airport raised in defense of KBR’s counterclaim.
It is true that “[a]n issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect.” Carlin v. State, 939 So.2d 245, 247 (Fla. 1st DCA 2006). But, here, we find little merit to KBR’s mootness argument because the jury’s consideration involved only whether the Airport’s affirmative defenses barred KBR from recovering on particular invoices. This disposition did not, however, implicate the merits of the Airport’s much broader breach of contract and negligence claims. In fact, the trial court specifically instructed the jury to separately consider the Airport’s claims from KBR’s counterclaim. And so, the jury’s ruling that certain invoices should be paid, did not preclude the Airport from prevailing on its separate claims.
B.
The Airport’s main argument is that the trial court committed reversible error by allowing KBR to disclose its settlement agreement with Phoenix to the jury, which it then used to discredit the Airport’s case.
A trial court’s decision to admit or exclude evidence is reviewed for abuse of discretion. Hendricks v. State, 34 So.3d 819, 822 (Fla. 1st DCA 2010). Its discretion, however, “is limited by the evidence code and the applicable case law, and its interpretation of those authorities is subject to de novo review.” Id. Where a settlement agreement is involved, the law is particularly clear: “The fact that a written release or covenant not to sue exists or the fact that any person has been dismissed because of such release or covenant not to sue shall not be made known to the jury.” § 46.015(3), Fla. Stat. (2012) (emphasis added); see also id. § 768.041(3) (applying the same prohibition to tort claims). Moreover, this Court has characterized the law in this area in absolute terms: “The unambiguous language of the statute admits no exceptions, and violation of the prohibition is reversible error.” Holmes v. Area Glass, Inc., 117 So.3d 492, 494 (Fla. 1st DCA 2013) (citing Saleeby v. Rocky Elson Constr., Inc., 3 So.3d 1078, 1080 (Fla.2009)). We emphasized:
*1116 Even a reference to settlement by counsel during voir dire or arguments necessitates a new trial. In other words, disclosure of the fact of settlement or dismissal is prohibited regardless of whether it is presented to the jury through evidence or through some other means.
Id. at 494-95 (citations omitted); see also Saleeby, 3 So.3d at 1085; Morgan v. Decker, 23 So.3d 201 (Fla. 1st DCA 2009).
In this case, KBR argues that the unambiguous law doesn’t apply because the Airport-Phoenix settlement agreement constitutes a “Mary Carter-style” agreement. In Dosdourian v. Carsten, the Florida Supreme Court permitted disclosure of a Mary Carter-style settlement agreement — one in which a party plaintiff and party defendant agreed to work together secretly at trial to the detriment of a nonsettling defendant (see Booth v. Mary Carter Paint Co., 202 So.2d 8, 11 (Fla. 2d DCA 1967)) — because it viewed such agreements as antithetical to the trial process. 624 So.2d 241, 244 (Fla.1993). It viewed these sorts of agreements as fostering “misrepresentations to the court and to the jury in order to maintain the charade of an adversarial relationship.” Id. To eliminate their “sinister influence” and the “sham of adversity” they presented, the court outlawed the use of “any agreement which requires the settling defendant to remain in the litigation, regardless of whether there is a specified financial incentive to do so.” Id. at 246.
Here, KBR claims that this ease too involves a prohibited Mary Carter-style agreement which was rightly disclosed to the jury. The trial court considered the issue below and found that the Airport-Phoenix settlement agreement did not constitute a Mary Carter-style agreement. And we agree with this conclusion. Unlike the agreement in Dosdourian, and real Mary Carter agreements, Phoenix did not agree to remain a party to the trial below; and it did not so remain. Because Phoenix wasn’t a party, the trial in this case did not present to the jury the sort of “charade” or “sham of adversity” that alarmed the court in Dosdourian. Rather, the only parties to the trial in this case — the Airport and KBR — were truly adverse.
Even though the trial court did not find the Airport-Phoenix settlement agreement to constitute a Mary Carter agreement, it nonetheless permitted its disclosure to the jury. What concerned the trial court were the agreement’s cooperation provisions and Phoenix’s potential to recover if the Airport’s case succeeded, which the court considered impediments to the jury’s ability to assess the credibility of the Airport’s witnesses. The Florida Supreme Court faced this same basic scenario in Saleeby. In Saleeby, the plaintiff settled with one of the defendants with a financial stake in the case, whose president subsequently testified in support of the plaintiffs case at trial and whose prior-defendant status conveyed “an obvious [and] intense motivation ... to give testimony that was unfavorable to [the defendant].” 3 So.3d at 1087 (Canady, J. dissenting). As in this case, the remaining defendant in the case cited Dosdourian and argued that the settlement agreement should be admitted to impeach the witness and demonstrate bias. But the Supreme Court disagreed, stating:
[T]he plain language of sections 768.041(3) and 90.408 expressly prohibits the admission at trial of evidence of settlement and that a defendant has been dismissed from the suit. These statutes do not contain an implicit exception permitting such evidence to be used for impeachment purposes, and the district court erroneously relied on our opinion in Dosdourian in finding one.
*1117 Id. at 1086. See also Holmes, 117 So.3d at 494-95; Morgan, 23 So.3d 201.
Guided by Saleeby, we likewise cannot construe Dosdourian as validating the settlement agreement’s disclosure in this case. Florida law has simply removed discretion from trial courts to permit the disclosure of settlement agreements under the circumstances presented here. Because the trial court improperly allowed the Airport-Phoenix settlement agreement to be made known to the jury, a new trial is warranted.[1]
C.
Finally, KBR’s cross-appeal argues that the Airport’s complaint must be dismissed altogether because the Airports Phoenix settlement agreement violated the anti-assignment clause in KBR’s contract with the Airport. Specifically, KBR argues that the Airport improperly assigned the KBR-Airport contract by relinquishing control of its legal claims and part of the potential recovery to Phoenix. But, like the trial court, we think the very terms of the Airport and Phoenix’s settlement belie KBR’s assignment argument. The Airport’s agreement with Phoenix states clearly that: “The [Airport] does not intend by the Agreement to assign any right, claim or interest to Phoenix in [Airport’s] Third Party Claims or under the [Airport’s contract] with ... KBR.” Furthermore, as the trial court noted below, the Airport remains free to settle any of its claims independently and without Phoenix’s approval. We thus affirm the trial court’s summary judgment order on the assignment issue.
III.
For the foregoing reasons, the final judgment is vacated, the trial court’s order denying the Airport’s motion for new trial is reversed, and this cause is remanded for a new trial. We affirm, however, the trial court’s summary judgment order on the assignment issue raised by the cross-appeal.
AFFIRMED in part; REVERSED in part; and REMANDED for a new trial.
ROBERTS and WETHERELL, JJ., concur.

. Because a new trial is necessary, we need not address the Airport’s other claim that the trial court improperly excluded a key witness from the previous trial.