# Supreme Court of Florida

_____

No. SC14-897
_____

**JOHN ROBERT SEBO, etc.,**
Petitioner,

vs.

**AMERICAN HOME ASSURANCE COMPANY, INC.,**
Respondent.

[December 1, 2016]

PERRY, J.

John Sebo seeks review of the decision of the Second District Court of Appeal in American Home Assurance Co. v. Sebo, 141 So. 3d 195 (Fla. 2d DCA 2013), on the ground that it expressly and directly conflicts with a decision of the Third District Court of Appeal in Wallach v. Rosenberg, 527 So. 2d 1386 (Fla. 3d DCA 1988), on a question of law.  We have jurisdiction.  See art. V, § 3(b)(3), Fla. Const.  For the following reasons, we quash the decision in Sebo, and approve the rationale of the Third District in Wallach.

**FACTS**

The facts of this case are taken from the Second District Court of Appeal's opinion:

> [John] Sebo purchased [a Naples, Florida] home in April 2005, when it was four years old. [American Home Assurance Company (AHAC)] provided homeowners insurance as of the date of the purchase. The policy, which insured against "all risks," was issued through a private client group and was referred to as a manuscript policy. It was not a standard form but instead was created specifically for the Sebo residence. The house and other permanent structures were insured for over $8,000,000. The policy also provided additional coverage for loss of use of the home.
>
> Shortly after Sebo bought the residence, water began to intrude during rainstorms. Major water leaks were reported to Sebo's property manager as early as May 31, 2005. She prepared a list of problems: leaks in the main house at the foyer, the living room, dining room, piano room, exercise room, master bathroom, and upstairs bathroom. By June 22, 2005, the property manager advised Sebo of these leaks in writing. It became clear that the house suffered from major design and construction defects. After an August rain, paint along the windows just fell off the wall. In October 2005, Hurricane Wilma struck Naples and further damaged the Sebo residence.
>
> Sebo did not report the water intrusion and other damages to AHAC until December 30, 2005. AHAC investigated the claim, and in April 2006 it denied coverage for most of the claimed losses. The policy provided $50,000 in coverage for mold, and AHAC tendered that amount to Sebo but stated that "the balance of the damages to the house, including any window, door, and other repairs, is not covered." In May 2008, Sebo renewed his claim and sent more information about the damages to AHAC, but AHAC again denied the claim except for the $50,000 in mold damages.
>
> The residence could not be repaired and was eventually demolished. In January 2007, Sebo filed suit against a number of defendants, including the sellers of the property, the architect who designed the residence, and the construction company that built it. He alleged that the home had been negligently designed and constructed and that the sellers had fraudulently failed to disclose the defects in

the property. Sebo eventually amended his complaint in November 2009, adding AHAC as a defendant and seeking a declaration that the policy provided coverage for his damages. After Sebo settled his claims against a majority of all other defendants, the trial proceeded only on his declaratory action against AHAC. The jurors found in favor of Sebo, and the court eventually entered judgment against AHAC.

Sebo, 141 So. 3d at 196-97.

On appeal, the Second District found that "[t]here is no dispute in this case that there was more than one cause of the loss, including defective construction, rain, and wind." Id. at 197. However, the court disagreed with the trial court's application of Wallach, 527 So. 2d 1386, and, in fact, disagreed with the Third District's "determination that the concurrent causation doctrine should be applied in a case involving multiple perils and a first-party insurance policy." Sebo, 141 So. 3d at 198. The court reversed and remanded for a new trial, "in which the causation of Sebo's loss is examined under the efficient proximate cause theory." Id. at 201.

**Standard of Review**

The issue presented is whether coverage exists under Sebo's all-risk policy when multiple perils combined to create a loss and at least one of the perils is excluded by the terms of the policy. To answer this question, this Court must determine the proper theory of recovery to apply, which is a pure question of law.

- 3 -

Therefore, the review is de novo. Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082, 1085 (Fla. 2005).

Additionally, the policy at issue in this case is an all-risk policy. We have stated that "[a]lthough the term 'all-risk' is afforded a broad, comprehensive meaning, an 'all-risk' policy is not an 'all loss' policy, and this does not extend coverage for every conceivable loss." Id. at 1086 (citation omitted). Insurance contracts are construed in accordance with the plain language of the policy. Id. (citing Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 33 (Fla. 2000)). However, if the language is susceptible to more than one reasonable interpretation and is therefore ambiguous, the policy will be strictly construed against the insurer and in favor of the insured. Id. "[A]mbiguous 'exclusionary clauses are construed even more strictly against the insurer than coverage clauses.' " Id. (quoting Anderson, 756 So. 2d at 34). In short, in all-risk policies such as the one held by Sebo, construction is governed by the language of the exclusionary provisions.

## DISCUSSION

We are confronted with determining the appropriate theory of recovery to apply when two or more perils converge to cause a loss and at least one of the perils is excluded from an insurance policy. When addressing this question, courts have developed competing theories on how to determine coverage: the efficient proximate cause and concurring cause doctrines. To begin our analysis, we first

explain these doctrines. Then we discuss the Second District's decision below. We conclude that when independent perils converge and no single cause can be considered the sole or proximate cause, it is appropriate to apply the concurring cause doctrine. Accordingly, we quash the decision below.

## Efficient Proximate Cause (EPC)

The EPC provides that where there is a concurrence of different perils, the efficient cause—the one that set the other in motion—is the cause to which the loss is attributable. Sabella v. Nat'l Union Fire Ins. Co., 377 P.2d 889, 892 (Cal. 1963); Fire Ass'n of Phila. v. Evansville Brewing Ass'n, 75 So. 196 (Fla. 1917).

We applied the EPC in Evansville Brewing, where the coverage at issue provided under an all-loss fire policy excluded loss caused by an explosion. We explained, "[w]hile the insurer is not liable for a loss caused by an explosion which was not produced by a preceding fire, yet if the explosion is caused by fire during its progress in the building, the fire is the proximate cause of the loss, the explosion being a mere incident of the fire, and the insurer is liable." Evansville Brewing, 75 So. at 198. In Evansville Brewing, we contemplated a chain of events where one peril directly led to a subsequent peril. In finding that coverage existed under the policy, we drew the distinction between a covered peril setting into motion an uncovered peril and an uncovered peril setting into motion a covered peril. Coverage exists for the former but not the latter.

The EPC was explained by the California Supreme Court[1] in Sabella, where it reasoned, " 'in determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.' " Sabella, 377 P.2d at 895 (quoting 6 George J. Couch, Cyclopedia of Insurance Law § 1466, at 5303-04 (1930)). The California Supreme Court thus reasoned that a covered peril that convenes with an uncovered peril may still provide for coverage under a policy when the covered peril triggered the events that eventually led to the loss.

## Concurrent Cause Doctrine (CCD)

The CCD provides that coverage may exist where an insured risk constitutes a concurrent cause of the loss even when it is not the prime or efficient cause. See Wallach, 527 So. 2d 1386; State Farm Mut. Auto. Ins. Co. v. Partridge, 514 P.2d 123, 133 (Cal. 1973).

The CCD originated with the California Supreme Court's decision in Partridge, where the court was presented with "a somewhat novel question of insurance coverage: when two negligent acts of an insured—one auto-related and

---

1. We mention California caselaw because Florida courts have looked to California decisions on insurance matters involving the EPC.

the other non-auto-related—constitute concurrent causes of an accident, is the insured covered under both his homeowner's policy and his automobile liability policy, or is coverage limited to the automobile policy?" Id. at 124-25. The insured, Wayne Partridge, owned a .357 Magnum pistol and had filed the trigger mechanism to create "hair trigger action." Id. at 125. Partridge was driving two friends, Vanida Neilson and Ray Albertson, in his insured Ford Bronco when he spotted a jack rabbit. In pursuit of the rabbit, he drove the Bronco off the road and hit a bump, causing the pistol to discharge. A bullet entered Neilson's arm, penetrated her spinal cord, and left her paralyzed. Id. Neilson filed an action against Partridge and entered into settlement discussions with State Farm. This dispute arose because the parties did not agree whether recovery was available from both the homeowner's and automobile policies. The homeowner's policy contained an exclusion for bodily injury arising out of the use of any motor vehicle. Id. at 126. State Farm relied on this exclusionary language to argue that only the automobile policy provided coverage for the injuries. Specifically, State Farm argued that the language of the policies was intended to be mutually exclusive and not provide for overlapping coverage. Id. at 128.

The California Supreme Court disagreed. First, the court noted that exclusionary clauses are more strictly construed than coverage clauses. Next, the court reasoned that an insured risk combined with an excluded risk to produce the

ultimate injury and determined "that coverage under a liability insurance policy is equally available to an insured whenever an insured risk constitutes simply a concurrent proximate cause of the injuries." Id. at 130 (applying the rationale of Brooks v. Metro. Life Ins. Co., 163 P.2d 689 (Cal. 1945)).  Thus, because neither peril could have created the loss alone but instead combined to create the loss, the California Supreme Court could not identify the prime, moving, or efficient cause in order to determine coverage, and pronounced a new doctrine.

The CCD was first applied in Florida in Wallach, where the Third District considered the coverage available to the Rosenbergs after Wallach's sea wall collapsed and led to a portion of the Rosenbergs' sea wall crumbling.  527 So. 2d 1386.  The Rosenbergs filed suit against Wallach, claiming that he had breached his duty to maintain his premises.  They also filed a claim under their all-risk homeowner's policy, which was denied because the policy contained an exclusion for loss resulting from earth movement or water damage.  Id. at 1387.  On appeal, the insurance company argued "that where concurrent causes join to produce a loss and one of the causes is a risk excluded under the policy, then no coverage is available to the insured."  Id.  The Third District rejected that theory and adopted "what we think is a better view—that the jury may find coverage where an insured risk constitutes a concurrent cause of the loss even where 'the insured risk [is] not . . . the prime or efficient cause of the accident.' "  Id. at 1387 (quoting 11

Ronald A. Anderson, Couch on Insurance 2d § 44:268, at 417 (rev. ed. 1982)). Further, the Third District noted that the California Supreme Court found the efficient cause language of Sabella "to be of little assistance in cases where both causes of the harm are independent of each other." Id. at 1388 ("We agree with the California court that the efficient cause language set forth in Sabella and cited by [Phelps] offers little analytical support where it can be said that but for the joinder of two independent causes the loss would not have occurred." (citing Partridge, 514 P.2d at 130 n.10)). Accordingly, the Third District held that "[w]here weather perils combine with human negligence to cause a loss, it seems logical and reasonable to find the loss covered by an all-risk policy even if one of the causes is excluded from coverage." Id. (citing Safeco Ins. Co. v. Guyton, 692 F.2d 551 (9th Cir. 1982)). Wallach has continued to be applied in Florida courts until the Second District's decision in Sebo. We accepted jurisdiction based on the conflict between Wallach and Sebo.

**This Case**

After determining that there was "no dispute in this case that there was more than one cause of the loss, including defective construction, rain, and wind," the Second District noted below that the parties had filed cross-motions for summary judgment, in which Sebo had asserted that AHAC was required to cover all losses under the concurrent cause doctrine. Sebo, 141 So. 3d at 197. Then, the court

- 9 -

expressed its disagreement with <u>Wallach</u>'s application to cases involving multiple perils and a first-party insurance policy.[2]  <u>Id.</u> at 198.  Relying on the California Supreme Court's clarification in <u>Garvey v. State Farm Fire & Cas. Co.</u>, 770 P.2d 704 (Cal. 1989), the Second District reasoned that "a covered peril can usually be found somewhere in the chain of causation, and to apply the concurrent causation analysis would effectively nullify all exclusions in an all-risk policy."  <u>Sebo</u>, 141 So. 3d at 201 (citing <u>Garvey</u>, 770 P. 2d at 705).  Accordingly, the Second District reversed and remanded the case for a new trial.  <u>Id.</u>

To determine whether coverage exists under Sebo's policy, we begin with the language of the policy.  It is undisputed that Sebo's all-risk policy included the following exclusion:

> The following exclusions apply to the Part II-PROPERTY section of your policy
> . . . .
> 8.  Faulty, Inadequate or Defective Planning
> We do not cover any loss caused by faulty, inadequate or defective:

---

2.  We note that the abrogation of the CCD was not properly before the Second District to consider.  AHAC never specifically argued that the CCD should be abrogated and replaced with the EPC in Florida trial or in its brief on appeal to the Second District.  In its order granting partial summary judgment for Sebo, the trial court found that "Florida recognizes the Doctrine of Concurrent Causation" and that the doctrine "applies to all-risk policies."  The trial court further found that the causes of loss "are not 'dependent' as that term is understood under" the doctrine.  After this adverse ruling, it does not appear that AHAC raised the issue again.  Likewise, the focus of AHAC's argument on appeal to the Second District was the improper application of the CCD based on the dependent nature of the perils.  Accordingly, the argument was not preserved, and the Second District improperly decided an issue that was not raised.

a. Planning, zoning, development, surveying, siting;
b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
c. Materials used in repair, construction, renovation or remodeling; or
d. Maintenance;
of part or all of any property whether on or off the residence.

Policy, Part II – Property, D. Exclusions, 8., Page 8.

Also not in dispute is that the rainwater and hurricane winds combined with the defective construction to cause the damage to Sebo's property. As in Partridge, there is no reasonable way to distinguish the proximate cause of Sebo's property loss—the rain and construction defects acted in concert to create the destruction of Sebo's home. As such, it would not be feasible to apply the EPC doctrine because no efficient cause can be determined. As stated in Wallach, "[w]here weather perils combine with human negligence to cause a loss, it seems logical and reasonable to find the loss covered by an all-risk policy even if one of the causes is excluded from coverage." Wallach, 527 So. 2d at 1388. Furthermore, we disagree with the Second District's statement that the CCD nullifies all exclusionary language and note that AHAC explicitly wrote other sections of Sebo's policy to avoid applying the CCD. Because AHAC did not explicitly avoid applying the CCD, we find that the plain language of the policy does not preclude recovery in this case.

- 11 -

Last, AHAC argues that the trial court erred by prohibiting the introduction of the amount of the settlements Sebo received in connection with this case. The trial court excluded evidence of the settlements based on this Court's decision in Saleeby v. Rocky Elson Construction, Inc., 3 So. 3d 1078 (Fla. 2009). The Second District did not rule on this issue because "it is not completely clear whether this is a valued policy law case." Sebo, 141 So. 3d at 203. The court therefore left this question to be resolved at retrial, noting that the 2005 version of the statute applied. Id. We disagree with the trial court's determination that Saleeby precluded AHAC from presenting the settlement amounts to offset the judgment.

Saleeby held that section 768.041, Florida Statutes, which bars disclosure to the jury of settlement or dismissal of a joint tortfeasor, and section 90.408, which bars the disclosure of evidence of an offer to compromise to prove liability, are clear and unambiguous. We held that "[n]o evidence of settlement is admissible at trial on the issue of liability." Saleeby, 3 So. 3d at 1083. Nothing in our decision affects the ability of a trial court to consider the amount of settlements as a post-judgment offset. We remand for reconsideration of this issue.

For the foregoing reasons, we quash the Second District's opinion below and remand for further proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
CANADY, J., concurs in result.
POLSTON, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., dissenting.

As the majority explains in footnote 2, the issue decided by the Second District and then by this Court, whether to apply the efficient proximate cause doctrine instead of the concurring cause doctrine, was not raised by the parties before the trial court or the Second District. Accordingly, the Second District should not have decided this issue. See Pagan v. State, 29 So. 3d 938, 957 (Fla. 2009) (stating that the "purpose of an appellate brief is to present arguments in support of the points on appeal" and failing to do so will mean that such claims are "deemed to have been waived" (quoting Duest v. Dugger, 555 So. 2d 849, 852 (Fla.1990))); City of Miami v. Steckloff, 111 So. 2d 446, 447 (Fla. 1959) ("An assigned error will be deemed to have been abandoned when it is completely omitted from the [appellate] briefs."); see also Robertson v. State, 829 So. 2d 901, 906 (Fla. 2002) ("[G]enerally, if a claim is not raised in the trial court, it will not be considered on appeal." (quoting Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644 (Fla. 1999))). Therefore, I would quash and remand for the Second District to consider the issue raised by the parties, and I would not reach the merits of the issue decided by this Court.

- 13 -

I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

Second District - Case No. 2D11-4063

(Collier County)

Edward K. Cheffy, David Allan Zulian, and Debbie Sines Crockett of Cheffy Passidomo, P.A., Naples, Florida; and Mark Andrew Boyle, Geoffrey Henry Gentile, Michael Wade Leonard, Amanda Kaye Anderson, Molly Ann Chafe Brockmeyer, Justin Michael Thomas, and Thomas Patrick Rechtin of Boyle, Gentile & Leonard, P.A., Fort Myers, Florida,

 for Petitioner

Anthony J. Russo, Scott J. Frank, Christopher M. Ramey, and Ezequiel Lugo of Butler Weihmuller Katz Craig LLP, Tampa, Florida; Janet L. Brown and Susan B. Harwood of Boehm, Brown, Harwood, P.A., Maitland, Florida; and Raoul G. Cantero, III, David P. Draigh, and Ryan Andrew Ulloa of White & Case LLP, Miami, Florida,

 for Respondent

Richard Hugh Lumpkin and Benjamin C. Hassebrock of Ver Ploeg & Lumpkin, P.A., Miami, Florida; and George Alexander Vaka and Nancy Ann Lauten of Vaka Law Group, P.L., Tampa, Florida,

 for Amicus Curiae United Policyholders

Michael Jerome Higer and Colleen Alexis Maranges of Higer Lichter & Givner, LLP, Aventura, Florida,

 for Amicus Curiae The Florida Association of Public Insurance Adjusters

James Andrew McKee, Thomas Joseph Maida, and Benjamin James Grossman of Foley & Lardner LLP, Tallahassee, Florida,

- 14 -

for Amici Curiae Florida Insurance Council, Property Casualty Insurance Association of America, National Association of Mutual Insurance Companies, and American Insurance Association