NORTHCUTT, Judge.
John Sebo purchased property insurance for his home in Naples, Florida, from American Home Assurance Company (AHAC). After the home was substantially damaged by rain and a hurricane, AHAC denied Sebo’s claim for the damages based on several coverage exclusions. Sebo filed a declaratory action seeking coverage and a jury found in his favor. The circuit court entered a judgment for more than $8,000,000. As we will explain in detail, we agree with AHAC that a new trial is required. We reverse and remand for proceedings consistent with this opinion.
Facts
Sebo purchased the home in April 2005, when it was four years old. AHAC provided homeowners insurance as of the date of the purchase. The policy, which insured against “all risks,” was issued through a private client group and was referred to as a manuscript policy. It was not a standard form but instead was created specifically for the Sebo residence. The house and other permanent structures were insured for over $8,000,000. The policy also provided additional coverage for loss of use of the home.
Shortly after Sebo bought the residence, water began to intrude during rainstorms. Major water leaks were reported to Sebo’s property manager as early as May 31, 2005. She prepared a list of problems: leaks in the main house at the foyer, the living room, dining room, piano room, exercise room, master bathroom, and upstairs bathroom. By June 22, 2005, the property manager advised Sebo of these leaks in writing. It became clear that the house suffered from major design and construction defects. After an August rain, paint along the windows just fell off the wall. In October 2005, Hurricane Wilma struck Naples and further damaged the Sebo residence.
Sebo did not report the water intrusion and other damages to AHAC until December 30, 2005. AHAC investigated the claim, and in April 2006 it denied coverage for most of the claimed losses. The policy provided $50,000 in coverage for mold, and AHAC tendered that amount to Sebo but stated that “the balance of the damages to the house, including any window, door, and other repairs, is not covered.” In May 2008, Sebo renewed his claim and sent more information about the damages to AHAC, but AHAC again denied the claim except for the $50,000 in mold damages.
The residence could not be repaired and was eventually demolished. In January 2007, Sebo filed suit against a number of defendants, including the sellers of the property, the architect who designed the residence, and the construction company that built it. He alleged that the home had been negligently designed and constructed and that the sellers had fraudulently failed to disclose the defects in the property. Sebo eventually amended his complaint in November 2009, adding AHAC as a defendant and seeking a declaration that the policy provided coverage for his damages. After Sebo settled his claims against a majority of all other defendants, the trial proceeded only on his *197 declaratory action against AHAC. The jurors found in favor of Sebo, and the court eventually entered judgment against AHAC.
The Policy
The policy covered “all risks of physical loss or damage to your house, contents, and other permanent structures unless an exclusion applies” resulting from “occurrences.” As it relates to this case, “occurrence” was defined as “[a] loss or an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which occurs during the Policy Period and results in personal injury or property damages.” AHAC denied coverage for most of Sebo’s losses based primarily on the policy’s exclusion for Faulty, Inadequate or Defective Planning:
We do not cover any loss caused by faulty, inadequate or defective:
a. Planning, zoning, development, surveying, siting;
b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
c. Materials used in repair, construction, renovation or remodeling; or
d. Maintenance;
of part or all of any property whether on or off the residence.
Although many of the exclusions in the policy provided coverage for ensuing damages,[1] the above-quoted exclusion did not. Pertinent here, the policy did provide $50,000 in coverage for ensuing damages caused by fungi, wet or dry rot, or bacteria, as long as the damages resulted from a covered peril. Rain was a covered peril. As mentioned, AHAC offered Sebo this $50,000 to settle his claims. Sebo refused to settle.
Coverage for Damages Caused by Multiple Perils
Sebo’s complaint against AHAC was for declaratory relief. It stated:
This Count is being plead[ed] as an alternative to the Counts plead[ed] against the other Defendants arising out of the latent construction defects discovered at the property, in substantial part, because certain of the Defendants have alleged in their affirmative defenses that the damages to the Property were caused by weather-related problems, including but not limited to Hurricane Wilma. Alternatively, this action is limited to the damages to the Property and the insured caused by weather-related problems, including but not limited to Hurricane Wilma, not caused solely by construction defects.
There is no dispute in this case that there was more than one cause of the loss, including defective construction, rain, and wind. In late 2010, AHAC and Sebo filed cross-motions for summary judgment on the issue of whether the policy covered Sebo’s damages. Sebo asserted AHAC was required to cover all its losses under the concurrent causation doctrine, which was applied in Wallach v. Rosenberg, 527 So.2d 1386 (Fla. 3d DCA 1988). Under that doctrine, when multiple perils act in concert to cause a loss, and at least one of the perils is insured and is a concurrent cause of the loss, even if not the prime or the efficient cause, the loss is covered. See id. at 1387-88. Thus, the Wallach court held “[w]here weather perils combine with human negligence to cause a loss, it seems logical and reasonable to find the loss covered by an all-risk policy even *198 if one of the causes is excluded from coverage.” Id. at 1388. In this case, defective construction, the basis of Sebo’s suit against the codefendants, was excluded from coverage, but weather-related damages, such as rain, were covered perils.
A prominent insurance treatise explains the concurrent causation rule:
[T]he concurrent cause rule takes the approach that coverage should be permitted whenever two or more causes do appreciably contribute to the loss, and at least one of the causes is a risk which is covered under the terms of the policy. Some jurisdictions limit the application of the concurrent cause rule by requiring that the concurring causes be independent of each other in order for the rule to apply.
Steven Plitt, Daniel Maldonado & Joshua D. Rogers, Couch on Insurance § 101.55 (3d ed.2012) (footnote omitted). Indeed, Wallach requires that the causes be independent. 527 So.2d at 1388. AHAC contends that the perils at play in this case were dependent and that therefore the circuit court erred in ruling that the concurrent causation doctrine applied. We do not address this issue because, as we will explain, we disagree with Wallach’s determination that the concurrent causation doctrine should be applied in a case involving multiple perils and a first-party insurance policy.
The concurrent causation doctrine is one of two prevailing theories employed to decide what coverage is afforded under these circumstances. The other one is the efficient proximate cause doctrine. Under it, the finder of fact, usually the jury, determines which peril was the most substantial or responsible factor in the loss. If the policy insures against that peril, coverage is provided. If the policy excludes that peril, there is no coverage.[2]
Although the efficient proximate cause doctrine has long existed in some form, its contemporary genesis is widely attributed to the California Supreme Court’s decision in Sabella v. Wisler, 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889 (1963). Wisler negligently built a home and negligently installed its sewer line on improperly compacted fill land. Four years after he sold the home to the Sabellas, the sewer line began to leak and infiltrate the unstable land beneath the foundation. The house settled but did not collapse. Id. at 892. The Sabellas sought coverage under a homeowners’ policy that insured against “all risks of physical loss” but excluded loss caused by “settling, cracking, shrinkage, or expansion of pavements, foundations, walls, floors, or ceilings; unless loss by ... collapse of buildings ensues.” Id. at 891-92. The insurer denied coverage for the Sabellas’ losses based on this exclusion. The California Supreme Court found as a matter of law that an insured peril, negligence in the installation of the sewer pipe, was the predominating or moving efficient cause of the loss. Id. at 895. It applied section 530 of the California Insurance Code, which stated that “ ‘[a]n insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause.’ ” Id. at 896. Because the court had determined that a covered peril was the proximate cause of the loss, it *199 ruled that there was coverage under the policy.
About ten years later, the California court came to a somewhat different resolution in a liability insurance case, State Farm Mutual Automobile Insurance Co. v. Partridge, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 128 (1978). Partridge, the named insured in a State Farm homeowners’ policy and a State Farm automobile policy, filed down the trigger mechanism on his pistol to give the weapon a “hair-trigger” action. Later, Partridge had the altered pistol with him when he and several friends were hunting rabbits by shooting guns out the windows of his four-wheel-drive vehicle. Partridge veered off the road to chase a rabbit; he hit a bump and the pistol discharged, severely wounding one of his passengers. Id. at 125-26.
The passenger sued Partridge and a dispute arose over whether both the automobile policy and the homeowners policy provided coverage. State Farm asserted that because the accident was automobile related, there was no coverage under the homeowners policy, which excluded coverage for “bodily injury ... arising out of the ... use of ... any motor vehicle.” Id. at 126. The lower court ruled that it was clear that the automobile policy was implicated because the accident related to the use of the insured vehicle. Id. at 125. But the lower court had identified two acts of negligence: driving the vehicle off the road onto rough terrain and filing the pistol’s trigger mechanism. Id. at 127. The supreme court remarked that the use of Partridge’s car was not the sole cause of his passenger’s injuries, but was only one of the joint causes. Id. at 129. The second cause was his negligent filing of the trigger mechanism, which was not auto-related conduct. The supreme court ruled:
Although there may be some question whether either of the two causes in the instant case can be properly characterized as the “prime,” “moving” or “efficient” cause of the accident we believe that coverage under a liability insurance policy is equally available to an insured whenever an insured risk constitutes simply [a] concurrent proximate cause of the injuries.
Id. at 130 (footnote omitted). Thus the Partridge court applied concurrent causation theory and found coverage for liability to a third party under both the homeowners and the automobile policies.
The California Supreme Court reconciled the Sabella and Partridge holdings in Garvey v. State Farm Fire & Casualty Co., 48 Cal.3d 395, 257 CahRptr. 292, 770 P.2d 704 (1989) (In Bank). The Garvey court began by observing that a number of California courts had misinterpreted and misapplied Sabella and Partridge. Sabella was a first-party property damage case while Partridge was a third-party liability case involving damages for personal injury. Courts that employed the Partridge concurrent causation approach in a first-party property insurance case, instead of the Sabella efficient proximate cause theory, ignored the important distinction between property loss coverage and tort liability coverage. Id. at 705.
Property insurance is a contract between the insured and the insurer to cover property losses that are either caused by certain perils that are specifically named in the policy or are caused by “all perils” except for those specifically excluded from coverage. These perils are usually physical forces such as fire, rain, and wind. Liability insurance, on the other hand, looks to tort concepts such as fault, proximate cause, and duty. Insuring liability for a person’s negligence includes coverage for a broad spectrum of unnamed *200 perils, i.e., losses of any sort that are caused by the insured’s negligent acts. Id. at 710. The covered perils in a property insurance policy determine the premium the insured will pay and the distribution of risk between the insured and the insurer. And as the Garvey court stated, an insured’s reasonable expectations of coverage under the policy “cannot reasonably include an expectation of coverage ... in which the efficient proximate cause of the loss is an activity expressly excluded, under the policy.” Id. at 711.
As elucidated in Garvey, the distinction between first-party property loss cases and third-party personal injury liability cases is the basis of our disagreement with Wallach.
Florida Law on Multiple Peril Losses
The First District’s Hartford Accident & Indemnity Co. v. Phelps, 294 So.2d 362 (Fla. 1st DCA 1974), was one of the first Florida cases to examine property insurance coverage for losses caused by multiple perils. In that case, two perils combined to cause damage to the Phelpses’ residence: the covered peril of water leaking from the plumbing system and the excluded peril of building settlement. The First District relied on Sabella and found coverage under the homeowners policy because the plumbing leak was the “proximate and efficient cause of the loss.” Id. at 364.
This efficient proximate cause theory was the prevailing law in Florida until the Third District’s decision in Wallach, 527 So.2d 1386, which also involved first-party coverage under a homeowners policy. The Wallach court briefly discussed Phelps, but concluded that the better rule would be that “where an insured risk constitutes a concurrent cause of the loss even where ‘the insured risk [is] not ... the prime or efficient cause of the accident’ ” coverage may be available. Id. at 1387 (quoting 11 G. Couch, Couch on Ins.2d § 44:268 (rev. ed.1982)). The court found Partridge to be persuasive and determined that the Sa-bella court’s efficient proximate cause theory was of little assistance when the perils were independent of each other. Thus, Wallach impliedly rejected Phelps and adopted the concurrent causation doctrine.
Wallach was issued the year before Garvey. And, like the California courts that were later held to have misapplied that state’s case law, Wallach did not differentiate between first-party coverage under a homeowners policy and a third-party tort liability policy. In fact, although Wallach involved a first-party dispute between a homeowner and its insurer, it quoted Partridge for the proposition that “coverage under a liability insurance policy is equally available to an insured whenever an insured risk constitutes simply a concurrent proximate cause of the injuries.” Id. at 1388 (quoting Partridge, 109 Cal.Rptr. 811, 514 P.2d at 130) (emphasis supplied).
The First District’s Phelps aside, it seems that the multiple-peril issue has not often arisen in Florida cases involving first-party coverage under homeowners policies. The dissent in Hagen v. Aetna Casualty & Surety Co., 675 So.2d 963, 971 (Fla. 5th DCA 1996) (Goshorn, J., dissenting), cited Wallach’s concurring causation language, but that case involved tort liability under a commercial general liability policy; it was not a first-party case. See also Transamerica Ins. Co. v. Snell, 627 So.2d 1275 (Fla. 1st DCA 1993) (citing the concurrent causation doctrine in a case involving an errors and omissions policy where Snell sued Transamerica’s insured for negligence, a third-party case).[3]
*201 Against this sparse background of precedents, we disagree with the rule stated in Wallach and applied by the circuit court in this case. As the Garvey court pointed out, a covered peril can usually be found somewhere in the chain of causation, and to apply the concurrent causation analysis would effectively nullify all exclusions in an all-risk policy. Garvey, 257 Cal.Rptr. 292, 770 P.2d at 705. For example, the AHAC policy states: “Your homeowners insurance policy does not cover property damage from floods. A separate policy of flood insurance may be available to cover flood damage for an additional premium from the federal government.” But taken to its extreme, the concurrent causation theory might have this policy cover flood damage in a hurricane when only a minor portion of the damages was caused by the covered peril of rain.
The coverage analysis in first-party claims, the subject of a contract between parties, should be decided on the basis of the contract: if the efficient proximate cause of the loss is a covered peril, the losses are covered; if it is an excluded peril, the losses are not covered. We recognize that Garvey was underpinned by a California statute, Cal. Ins.Code § 530, 532, and that Florida does not have such a legislative mandate.[4] But we note that the majority of states have adopted the efficient proximate cause theory for analyzing this issue. See Michael C. Phillips & Lisa L. Copien, Concurrent Causation versus Efficient Proximate Cause in First-Party Property Insurance Coverage Analysis, 36 Brief 32, 35 (Winter 2007) (listing thirty-four states that have adopted the efficient proximate cause model, and only seven, including Florida, that have applied the concurrent causation theory).
We reverse and remand this case for a new trial in which the causation of Sebo’s loss is examined under the efficient proximate cause theory. Because the question of whether multiple perils are dependent or independent is relevant only under a concurrent causation analysis, see Couch on Insurance § 101.55 (quoted above), we need not address AHAC’s argument on the point.
Anti-Concurrent Cause Language in Exclusion
Endeavoring to avoid coverage for uninsured perils under either the efficient proximate cause theory or the concurrent causation notion, insurers began adding language known generieally as anti-concurrent cause clauses to their policies. AHAC argues that the anti-concurrent cause language in its exclusion for defective work entitled it to a summary judgment on all of Sebo’s claims except for the $50,000 it tendered for ensuing mold damages. We note that some states reject the application of these clauses. See, e.g., Howell v. State Farm Fire & Cas. Co., 218 Cal.App.3d 1446, 267 Cal.Rptr. 708, 712-13 (1990), disapproved on other grounds by Reid v. Google, Inc., 50 *202 Cal.4th 512, 113 Cal.Rptr.3d 327, 235 P.3d 988 (2010). But Florida courts have not definitively weighed in on this topic. It is not necessary for us do so here because the language relied upon by AHAC was insufficient to exclude losses arising from concurrent causes.
The defective work exclusion stated merely that it applied to any loss caused by defective work. In contrast, other exclusions in the Sebo policy contained specific anti-concurrent-cause language. For example, the pollution or contamination exclusion recited that AHAC did not “cover any loss, directly or indirectly, and regardless of any cause or event contributing concurrently or in any sequence to the loss” caused by pollutants. We construe exclusionary clauses in insurance policies even more strictly against an insurer than we do coverage clauses, and we hold the insurer responsible to set forth what damages are excluded under the policy. Fayad v. Clarendon Nat’l Ins. Co., 899 So.2d 1082, 1086 (Fla.2005). Contrasted with the other exclusionary clauses in the same policy, AHAC’s defective work exclusion simply did not exclude losses arising from concurrent causes.
Evidence of Settlements
AHAC argues that if it is entitled to a new trial, as we so hold, it should be allowed to introduce evidence that Sebo had settled claims for faulty construction and design with some of AHAC’s former codefendants. It relies on Citizens Property Insurance Corp. v. Ashe, 50 So.3d 645 (Fla. 1st DCA 2010), for this proposition.
Ashe was a valued policy law case. The valued policy law statute applies in the case of a total loss. It states in paragraph (l)(a) that “the insurer’s liability under the policy for such total loss, if caused by a covered peril, shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid.” § 627.702(l)(a), Fla. Stat. (2005). Ashe’s home was destroyed in Hurricane Ivan. Citizens insured the residence for losses caused by a windstorm. Ashe also had a policy of flood insurance through USAA and the National Flood Insurance Program that insured the house against damages from a flood. He received the full amount of the flood coverage and then sought full coverage for his loss under his windstorm policy, which was subject to the valued policy statute. In the ensuing lawsuit, the court determined that Citizens was permitted to introduce evidence that Ashe had received benefits from his flood policy, but not the amount he had received.
The decision in Ashe was grounded on a valued policy law concept explained in Florida Farm Bureau Casualty Insurance Co. v. Cox, 967 So.2d 815, 817 (Fla.2007), in which the court answered no to the following certified question:
DOES SECTION 627.702(1), FLORIDA STATUTES (2004), REFERRED TO AS THE VALUED POLICY LAW, REQUIRE AN INSURANCE CARRIER TO PAY THE FACE AMOUNT OF THE POLICY TO AN OWNER OF A BUILDING DEEMED A TOTAL LOSS WHEN THE BUILDING IS DAMAGED IN PART BY A COVERED PERIL BUT IS SIGNIFICANTLY DAMAGED BY AN EXCLUDED PERIL?
It is clear from the certified question that the Cox court was interpreting the 2004 version of the statute. By the time the case reached the supreme court, the legislature had already amended section 627.702(1) to provide that:
(b) The intent of this subsection is not to deprive an insurer of any proper defense under the policy, to create new or *203 additional coverage under the policy, or to require an insurer to pay for a loss caused by a peril other than the covered peril. In furtherance of such legislative intent, when a loss was caused in part by a covered peril and in part by a noncovered peril, paragraph (a) does not apply. In such circumstances, the insurer’s liability under this section shall be limited to the amount of the loss caused by the covered peril. However, if the covered perils alone would have caused the total loss, paragraph (a) shall apply. The insurer is never liable for more than the amount necessary to repair, rebuild, or replace the structure following the total loss, after considering all other benefits actually paid for the total loss.
§ 627.702(1), Fla. Stat. (2005). Thus, the Ashe court ruled that evidence of benefits received for an uncovered peril was relevant to the issue of whether flood or wind caused the total loss of the home, and it was therefore admissible at trial. 50 So.3d at 652.
The problem we have in applying Cox and Ashe in this case is that it is not completely clear whether this is a valued policy law case. The jury was asked to determine the dollar amount of the FEMA[5] threshold that represented 50% of the value of the insured premises, a calculation used to determine whether, as Sebo argued, the property was a constructive total loss. Although AHAC argued valued policy law in some motions, it seems that at some point it questioned whether the property suffered a total loss. We therefore leave all issues related to valued policy law, including the admissibility of benefits Sebo received from codefendants, to be clarified on retrial. We note that the 2005 version of the statute applies to this case— Sebo’s claim was filed in December 2005. See § 627.702(l)(c), Fla. Stat. (2005).
Because a retrial is necessary, we will not address AHAC’s other two issues on appeal or Sebo’s issues on cross-appeal. The parties are free to again raise these issues in the circuit court to the extent that they may still be applicable at the retrial.
Judgment reversed and remanded for a new trial consistent with this opinion.
LaROSE and CRENSHAW, JJ., Concur.

. For example, while losses for damage caused by rodents, insects, birds or vermin were excluded, the policy stated that “we do insure ensuing covered loss unless another exclusion applies.”

. Texas has adopted a third approach: where covered and noncovered perils combine to cause a loss, the insured must segregate the damages and will be entitled to recover only the portion caused by the covered peril. See Wallis v. United Servs. Auto. Ass'n, 2 S.W.3d 300, 302-03 (Tex.Ct.App.1999).

. Because many hurricanes have ravaged this state in recent decades, it is somewhat surprising to find so few Florida cases addressing coverage when multiple perils cause a *201 loss. These issues arose with frequency in Louisiana and Mississippi after Hurricane Katrina hit the coasts of those states. See, e.g., Tuepker v. State Farm Fire & Cas. Co., Civil Action No. 1:05CV559 LTS-JMR, 2006 WL 1442489 (S.D.Miss. May 24, 2006) (not reported in F.Supp.2d), aff'd in part, rev'd in part, and remanded, 507 F.3d 346 (5th Cir.2007) (involving a home damaged by the confluence of hurricane-force winds and wind-driven rain as well as a storm surge; wind and rain damage covered under the policy but storm surge subject to a water damage exclusion); Ruiz v. State Farm Fire & Cas. Co., Civil Action No. 1:07CV89 LTS-RHW, 2007 WL 1514015 (S.D.Miss. May 21, 2007) (not reported in F.Supp.3d).

. Florida does have a statute that applies when a building is a total loss, § 627.702, Fla. Stat. (2005), which we address in a later portion of this opinion.

. Federal Emergency Management Agency.