NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

WILLIAM R. PEEK and STACEY PEEK,   )
   )
   Appellants,   )
   )
v.   )   Case No. 2D14-780
   )
AMERICAN INTEGRITY INSURANCE   )
COMPANY OF FLORIDA,   )
   )
   Appellee.   )
   )

Opinion filed September 25, 2015.

Appeal from the Circuit Court for
Hillsborough County; Paul L. Huey, Judge.

Ernest P. Wagner of McGinnis Wutscher
Beiramee LLP; Michael Childress of
Childress Duffy Ltd., Chicago; and Steven
L. Brannock of Brannock & Humphries,
Tampa, for Appellants.

Andrew P. Rock and Wesley W. Levins
of Rock Law Group, P.A., Maitland, for
Appellee.

SLEET, Judge.

William and Stacey Peek challenge the final judgment entered against

them in favor of American Integrity Insurance Company in the Peeks' breach of contract

action against American Integrity. The action stemmed from American Integrity's denial

of the Peeks' claim for loss and damage to their home after Chinese drywall was used in its construction. The trial court's final judgment is based on its order granting American Integrity's motion for directed verdict. Because the Peeks failed to establish below that their loss was caused by a peril covered by their American Integrity insurance policy, we affirm.

The relevant facts of this case are undisputed. Chinese drywall was used in the construction of the Peeks' new home in Tampa. The Peeks had an all-risk insurance policy with American Integrity effective November 21, 2008. Immediately after they moved into the home in January 2009, the Peeks began to smell a sulfur odor. In August 2009, the odor worsened and the Peeks reported a claim to American Integrity indicating that they suffered a loss due to Chinese drywall. Specifically, the Peeks claimed that there was a noxious sulfur odor in the residence that caused them to vacate the home. Furthermore, the Peeks claimed that there was corrosion and deterioration of copper coils in their air conditioning system and other electrical components in the house.

American Integrity concluded that the Peeks' all-risk policy did not afford coverage for the claimed losses associated with the Chinese drywall. American Integrity cited policy exclusions for latent defects, corrosion, pollutants, and faulty, inadequate, or defective construction materials and contended that the Chinese drywall fit the definitions of all of these exclusions. In response to the denial of coverage, the Peeks sued American Integrity for breach of the insurance contract.

The parties acknowledge that they conducted discovery, pretrial proceedings, and the actual trial with the understanding that the Peeks' burden was to

prove the cause of their loss pursuant to the "concurrent cause" rule set forth in Wallach v. Rosenberg, 527 So. 2d 1386, 1387 (Fla. 3d DCA 1988). "Under that doctrine, when multiple perils act in concert to cause a loss, and at least one of the perils is insured and is a concurrent cause of the loss, even if not the prime or the efficient cause, the loss is covered." Am. Home Assurance Co. v. Sebo, 141 So. 3d 195, 197 (Fla. 2d DCA 2013) (citing Wallach, 527 So. 2d at 1387-88). As such, both the Peeks and American Integrity presented their cases with the understanding that in order to be entitled to damages, the Peeks had to prove that a covered peril at least contributed to the cause of the loss.

At trial, the Peeks established through their own testimony and that of a representative of American Integrity that they suffered a loss to their property within the insurance policy period. The Peeks, however, did not present any expert testimony or other evidence as to the cause of the loss. During its case-in-chief, American Integrity presented expert testimony from Dr. Ralph Moon, a botanist with extensive experience in testing and analyzing building materials, as well as the investigation of building failure, mold, air quality, material failure, and water damages. Dr. Moon testified that Chinese drywall contains elemental sulfur, which when exposed to the atmosphere immediately emits corrosive and noxious gases. According to Dr. Moon, it is not temperature sensitive and the destructive effects of the sulfur gases progress without requiring any energy. He opined that the Chinese drywall used in the construction of the Peeks' home was emitting destructive gases at the moment of manufacture, prior to its installation in the Peeks' home. He therefore concluded that it was a faulty, inadequate, or defective construction material. He also testified that the gases emitted

from the drywall caused corrosion in the metal components of the appliances and air conditioning system in the Peeks' home. Finally, he opined that the Chinese drywall itself was a pollutant due to its emission of noxious and destructive gases.

On cross-examination of Dr. Moon, counsel for the Peeks attempted to prove that Florida's high humidity was a concurrent cause that acted in concert with the sulfur gases to cause the loss to their home. And Dr. Moon did concede that humidity could accelerate the emission of the sulfur gases. However, he qualified that statement by adding that it was based upon an assumption that the Peeks did not regularly air condition their home during times of higher humidity. He noted that there was no evidence that the Peeks failed to run their air conditioning system regularly during the spring and summer when they first detected the sulfur odor. He concluded that the Chinese drywall emitted the destructive gases despite geography and climate. Ultimately, he disagreed that humidity was a driving factor behind the Peeks' loss, characterizing it as merely a "component" of the chemical equation. Finally, Dr. Moon testified that there was no empirical evidence that humidity increased the amount of noxious gases produced by the Chinese drywall installed in the Peeks' home.

At the conclusion of Dr. Moon's testimony, both parties rested their respective cases. The Peeks did not present any rebuttal evidence to prove any exceptions to the exclusions raised by American Integrity, nor did they present any evidence of any ensuing losses. Thereafter, both parties moved for directed verdicts. The Peeks conceded that their home was improperly designed and had construction defects, but they argued that humidity was a concurrent covered cause of the loss. American Integrity responded that the defective Chinese drywall was the sole cause of

the loss.  The trial court reserved ruling on the motions for directed verdict and conducted a charge conference to finalize jury instructions based upon the concurrent cause doctrine.

On the following morning, American Integrity presented the trial court with this court's then newly-released opinion in Sebo, 141 So. 3d 195, as support for its renewed motion for directed verdict.  In Sebo, this court "disagree[d] with Wallach's determination that the concurrent causation doctrine should be applied in a case involving multiple perils and a first-party insurance policy."  141 So. 3d at 198.  Instead, this court held that "[t]he coverage analysis in first-party claims . . . should be decided on the basis of the contract: if the efficient proximate cause of the loss is a covered peril, the losses are covered; if it is an excluded peril, the losses are not covered."  Id. at 201.  Under this rule, "the finder of fact, usually the jury, determines which peril was the most substantial or responsible factor in the loss.  If the policy insures against that peril, coverage is provided.  If the policy excludes that peril, there is no coverage."  Id. at 198.

In response to American Integrity's renewed motion for directed verdict, the Peeks did not request to reopen their case to address this new causation doctrine, nor did they move for a mistrial based upon the fact that trial was conducted with a different measure of causation in mind.  Instead, the Peeks asked the court to decide the motions for directed verdict based upon the efficient proximate cause doctrine in Sebo.  The Peeks acknowledged that Sebo changed their burden of proof from showing that humidity was but one cause of their loss to showing that it was the efficient proximate cause of the loss, but they maintained that they had met that burden.  The trial court disagreed and ruled that the Chinese drywall was the proximate efficient

- 5 -

cause of the Peeks' loss and that "there were no ensuing losses because all of the losses occurred as a direct and continuous result of the corrosive Chinese drywall." The trial court therefore granted American Integrity's motion for directed verdict and entered final judgment for American Integrity on the Peeks' breach of insurance contract action. It is this final judgment that the Peeks now challenge.

On appeal, the Peeks argue that the trial court erred in granting American Integrity's motion for directed verdict because (1) the evidence established that their loss was caused by both the Chinese drywall and the humidity of Florida; (2) humidity is covered by the insurance policy as a "weather event"; and (3) the question of whether the Chinese drywall or the humidity of Florida was the efficient proximate cause of the loss was a question that should have been determined by the jury.[1] We disagree.

"[T]he general rule of evidence is that a plaintiff seeking to recover under an 'all-risks' policy has the burden of proving that, while the policy was in force, a loss occurred to the insured's property." Hudson v. Prudential Prop. & Cas. Ins. Co., 450 So. 2d 565, 568 (Fla. 2d DCA 1984). Under the efficient proximate cause rule, the plaintiff must also prove that the covered loss was the "most substantial or responsible" cause of the loss. Sebo, 141 So. 3d at 198. The burden then shifts to the insurer to prove that the efficient proximate cause of the loss is excepted or excluded. Cf. Hudson, 450 So. 2d at 568.

Here, the Peeks did establish a loss during the insurance policy's effective period. However, they are incorrect in maintaining that the evidence below established

_____

[1]The Peeks also argue on appeal that Sebo was wrongly decided and should be reconsidered by this court. We decline that invitation.

that humidity contributed to that loss.  At trial, there was no dispute that the Chinese drywall inside the Peeks' home contained elemental sulfur and emitted malodorous, noxious, and corrosive sulfur gases.  Dr. Moon opined that these destructive gases were present at the moment that the Chinese drywall was manufactured and that the gases began emanating from the drywall as soon as the elemental sulfur in the drywall mixed with the air.  Although he did acknowledge on cross-examination that humidity could accelerate the emission of the gases, accelerating the emission is not the same as causing it.  Dr. Moon specifically testified that the Chinese drywall would produce the destructive gases in any climate, and the Peeks did not present an expert witness of their own to contradict Dr. Moon's testimony.  As such, the uncontroverted evidence demonstrated that humidity was not a peril that caused the Peeks' loss, let alone that it was the efficient proximate cause of their loss.[2]

Furthermore, American Integrity met its burden of proving that the Chinese drywall was an excluded peril.  Dr. Moon's testimony established that the Chinese drywall's defective nature could not be discovered without testing, thus fitting the definition of a latent defect; latent defects are excluded under the Peeks' policy.  And the elemental sulfur and the concomitant gases were proven to meet the statutory definitions of "pollution" and "contaminant" contained in section 403.031(1), (7), Florida Statutes (2008).  The Peeks' policy excluded gaseous pollutants and contaminants, including vapors and fumes.

---

[2]Because the Peeks failed to establish that there was a concurrent cause of their loss, their argument that the language of their insurance policy contractually obligated the parties to determine causation under the concurrent cause doctrine is moot.

We do acknowledge that in <u>Sebo</u> this court stated that under the efficient proximate cause doctrine "the finder of fact, usually the jury, determines which peril was the most substantial or responsible factor in the loss." 141 So. 3d at 198. However, the Peeks affirmatively requested that the trial court address American Integrity's motion for directed verdict, maintaining that they had proven their case under either measure of causation. And based on our de novo review of the record before us, there was no conflict in the evidence below as to the efficient proximate cause of the Peeks' loss. See <u>Sims v. Cristinzio</u>, 898 So. 2d 1004, 1006 (Fla. 2d DCA 2005) ("The standard of review on appeal of the trial court's ruling on a defendant's motion for directed verdict is the same test used by the trial court in ruling on the motion."). Nor were there any inferences that could be lawfully drawn from the evidence that would have supported a conclusion that there was any other cause of the Peeks' loss. As such, there was no question for the jury to resolve, and the trial court did not err in entering directed verdict for American Integrity. <u>See id.</u> at 1005 ("A motion for directed verdict should be granted only where no view of the evidence, or inferences made therefrom, could support a verdict for the nonmoving party.").

The Peeks also argue in the alternative that even if the excluded peril of Chinese drywall is the efficient proximate cause of their loss, American Integrity is still required to cover the loss under the "ensuing loss" provision of the Peeks' insurance policy. That provision provides as follows: "We do not insure loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered."

An ensuing loss follows as a consequence of an excluded loss, and the crux of the ensuing loss provision is that there must be a covered cause of loss that ensues from the excluded cause of loss. TRAVCO Ins. Co. v. Ward, 715 F. Supp. 2d 699 (E.D. Va. 2010) (interpreting an ensuing loss provision similar to the one at issue here). Given that American Integrity proved that the Chinese drywall was an excluded defective construction material, it was the Peeks' burden to demonstrate that the policy covered a loss that occurred subsequent to and as a result of that excluded peril.

The Peeks argue that the evidence below established that the defective Chinese drywall led to (1) a subsequent loss of use of their home due to odor and (2) subsequent damage to metals and electronics separate from any defective materials, pollutants, or corrosion. We do not agree.

First, the evidence below demonstrated that the odor present in the Peeks' home was a manifestation of the sulfur gases emanating from the Chinese drywall and that the corrosion was caused by the chemicals released by the sulfur gases, which emanated from the Chinese drywall. As such, the losses were not "ensuing." Id. at 718-19 ("An ensuing loss is a loss that occurs subsequent in time to an initial loss. In the present case, only a single claimed loss has occurred. The Chinese Drywall released reduced sulfur gases which harmed Defendant, members of his family, and items of personal property inside the Ward Residence. Although this damage occurred gradually over a period of time, it still represents a single discrete loss from a single discrete injury, namely the off-gassing of defective Chinese Drywall." (footnote omitted)).

Additionally, both of the claimed ensuing losses are specifically excluded under the policy because an excluded cause of loss—defective Chinese drywall—led directly to another set of exclusions—pollution and corrosion. Exclusions must be read in conjunction with other policy provisions, and ensuing loss exceptions are not applicable if the ensuing loss was directly related to the original excluded risk. Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 167 (Fla. 2003). In Swire, the Florida Supreme Court confirmed that an ensuing loss exception is not applicable if the ensuing loss is directly related to the original excluded risk. "To hold otherwise would be to allow the ensuing loss provision to completely eviscerate and consume the design defect exclusion." Id. at 168. Here, the damage to the Peeks' home and consequently the odors and corrosion of metals and electronics were directly related to the defective Chinese drywall and thus directly stemmed from an excluded risk. Thus coverage was excluded under the express terms of the insurance contract. Accordingly, we must affirm the trial court's final judgment in favor of American Integrity.

Affirmed.

ALTERBERND and SILBERMAN, JJ, Concur.