NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

CITIZENS PROPERTY INSURANCE )
CORPORATION, )
)
Appellant, )
)
v. ) Case No. 2D14-3002
) 2D14-5077
)
RONA SALKEY and TREVOR SALKEY, ) CONSOLIDATED
)
Appellees. )
)

Opinion filed February 26, 2016.

Appeal from the Circuit Court for
Polk County; J. Dale Durrance, Judge.

Karen M. Walker of The Rock Law
Group, P.A., Maitland, and Kara Berard
Rockenbach and Lauren J. Smith of Methe
& Rockenbach, P.A., West Palm Beach,
for Appellant.

K.C. Bouchillon of Lilly, O'Toole &
Brown, LLP, Bartow, and Raymond T.
Elligett, Jr. and Amy S. Farrior of Buell
& Elligett, P.A., Tampa, for Appellees.


CRENSHAW, Judge.

Rona and Trevor Salkey sued Citizens Property Insurance Corporation for

breach of contract after it denied coverage of their sinkhole claim. A jury found in favor

of the Salkeys, and the trial court entered a final judgment awarding them $542,883.49. Citizens appeals the final judgment and the resulting judgment awarding the Salkeys attorneys' fees and costs. Because the trial court gave an improper jury instruction on Citizens' burden of proof and compounded that error with a misleading instruction regarding a directed verdict it entered in favor of the Salkeys, we reverse the final judgments and remand for a new trial.

Background

In 2008 the Salkeys purchased an all-risk homeowners insurance policy from Citizens. The policy insured against the risk of direct physical losses to the property unless expressly excluded. It contained an exclusion for loss caused by sinkholes, but the Salkeys purchased a sinkhole loss coverage endorsement. That endorsement provided coverage for "direct physical loss" caused by sinkhole activity.

After discovering damage to their property during the policy period, the Salkeys presented a sinkhole claim to Citizens. Citizens retained MCD of Central Florida to investigate the claim. MCD concluded that the property damage was not due to sinkhole activity. Instead, it determined that soils in a reclaimed mine zone were causing the damage to the Salkeys' property. Based on MCD's assessment, Citizens denied the Salkeys' sinkhole claim. The Salkeys then filed a breach of contract claim against Citizens.

At trial the parties disputed causation. The Salkeys' expert witness acknowledged that the reclaimed mine zone contributed to the damage, but he testified that sinkhole activity was the most substantial factor in the loss. Citizens' experts testified that there was no sinkhole activity and that the damage was caused by soils in

the reclaimed mine zone. Because Citizens did not dispute the issue, the trial court granted the Salkeys' motion for directed verdict on their threshold burden to prove physical damage during the policy period.

At the charge conference, Citizens objected to a number of the Salkeys' proposed jury instructions. The trial court crafted the following jury instruction on burden of proof:

> <u>Plaintiffs have the burden of proof to establish, by the greater weight of the evidence, that their property experienced damages from a sinkhole</u>. If the greater weight of the evidence does not support the Plaintiff's claim, your verdict should be for the Defendant, Citizens Property Insurance Corporation.
>
> If, however, the greater weight of the evidence supports the Plaintiffs' claim, then your verdict should be for the Plaintiffs, the Salkeys.
>
> <u>The court has determined and now instructs you that the Plaintiffs have met their burden of proving that damage occurred to their home during the policy period</u>.
>
> You are instructed that the burden of proof is on Defendant to prove that all of the damage to the residence is caused by conditions excluded under the policy.
>
> <u>The Defendant has the burden to prove that all of the damage is non-sinkhole related</u>. If you find that any damage is caused by sinkhole activity, or that sinkhole activity is acting in conjunction with any other cause, the Defendant has not met its burden and you must find that the damage is a covered loss.

(Emphasis added.) During closing arguments, counsel for the Salkeys emphasized the burden-of-proof instruction, arguing that Citizens had to prove the damage was "100 percent, not sinkhole-related."

- 3 -

The jury returned a verdict in favor of the Salkeys. The trial court entered its final judgment awarding the Salkeys $542,883.49. In a separate order it granted the Salkeys' motion for attorneys' fees and costs. Citizens now appeals the final judgments.

Analysis

The trial court erred as a matter of law by requiring Citizens to prove that no portion of the Salkeys' loss was sinkhole related. Generally, an insured seeking coverage under an all-risks policy must prove that a loss occurred during the policy period. Citizens Prop. Ins. Corp. v. Munoz, 158 So. 3d 671, 674 (Fla. 2d DCA 2014). Then "the burden shifts to the insurer to show that the loss resulted from an excluded cause." Id. In American Home Assurance Co. v. Sebo, 141 So. 3d 195, 201 (Fla. 2d DCA 2013), rev. granted, 160 So. 3d 898 (Fla. 2014), this court held that in first-party claims involving multiple perils, the factfinder must apply the efficient proximate cause doctrine to determine the cause of the loss. Under the efficient proximate cause doctrine, the jury must determine "which peril was the most substantial or responsible factor in the loss." Id. at 198. "[I]f the efficient proximate cause of the loss is a covered peril, the losses are covered; if it is an excluded peril, the losses are not covered." Id. at 201.

Here, before trial, the trial court properly concluded that the policy was an all-risk policy despite the sinkhole endorsement. See Munoz, 158 So. 3d at 674 (concluding an endorsement does not change the nature of the underlying "all risks" policy). Accordingly, once the trial court granted the directed verdict on the Salkeys' threshold burden to prove a loss occurred during the policy period, it correctly determined that Citizens had the burden to prove that the loss was excluded.

The parties presented evidence that damage to the Salkeys' property was caused by multiple perils: sinkhole activity and problematic soil in a reclaimed mine zone.  Therefore, during the charge conference, counsel for Citizens explained this court's holding in Sebo and argued that the jury must apply the efficient proximate cause doctrine to determine which peril was the most substantial or responsible factor in the loss.  Counsel explained that if the policy excludes that peril, there is no coverage. The trial court agreed that this court's Sebo decision controls.

Despite the trial court's acknowledgement of Sebo, it gave an incorrect jury instruction on the burden of proof.  Instead of requiring Citizens to prove that the efficient proximate cause of the Salkeys' loss was an excluded peril not related to sinkhole activity, the trial court imposed a higher burden.  It required Citizens to prove that all of the damage was excluded and non-sinkhole related.

The error was compounded by the instruction's third paragraph describing the directed verdict entered in favor of the Salkeys.  The jury was first informed that the Salkeys had the burden to prove "that their property experienced damages from a sinkhole."  But the third paragraph instructed the jury that the "court has determined and now instructs you that the Salkeys have met their burden of proving that damage occurred to their home during the policy period."  This instruction is confusing and may have misled the jury, causing it to conclude that the Salkeys met their burden of proving that their property was damaged by a sinkhole, making it impossible for Citizens to meet its burden of proving no loss was sinkhole related.  See, e.g., Allstate Ins. Co. v. Vanater, 297 So. 2d 293, 295 (Fla. 1974) ("An instruction which tends to confuse rather

than enlighten the jury is cause for reversal if it may have misled the jury and caused them to arrive at a conclusion that otherwise they would not have reached.").

Because the trial court's burden-of-proof jury instruction was misleading and incorrectly required Citizens to prove that all of the Salkeys' property damage was caused by an excluded peril, we reverse the final judgments and remand for a new trial. We instruct the court to apply the efficient proximate cause doctrine described in Sebo.

Reversed and remanded.


BLACK, J., Concurs.
ALTENBERND, J., Concurs with opinion.


ALTENBERND, Judge, Concurring.

I agree that Citizens is entitled to a new trial in this case. I also agree that Florida uses the "efficient proximate cause" doctrine in some coverage disputes. Am. Home Assurance Co. v. Sebo, 141 So. 3d 195, 201 (Fla. 2d DCA 2013), rev. granted, 160 So. 3d 898 (Fla. 2014). This doctrine essentially requires the jury to determine which peril was the most substantial or responsible factor in the loss. Id. at 198. The party who must establish that a loss is covered or that a loss is excluded should typically have the burden of proof on this complicated issue. See Citizens Prop. Ins.

Corp. v. Munoz, 158 So. 3d 671, 673 (Fla. 2d DCA 2014), rev. denied, No. SC15-414, 2015 WL 9307172 (Fla. Dec. 18, 2015).

I remain concerned, however, that the analysis in controlling precedent treating sinkhole coverage in a typical Florida homeowners policy as a type of all-risk coverage may be incorrect. In Mejia v. Citizens Property Insurance Corp., 161 So. 3d 576, 580 (Fla. 2d DCA 2014) (Altenbernd, J. Concurring), I suggested that a similar policy was "an amalgam that is neither an all risks nor a named peril form." On closer examination of the policy in this case, although the policy is very poorly structured and difficult to read, I conclude that Citizens has provided an insuring agreement that is both an all-risks agreement and a named peril agreement. In a nutshell, the insuring agreement first provides all-risk coverage, which is subject to an exclusion for sinkhole loss. When the exclusion applies, the insuring agreement provides two named perils that may still provide coverage to the insured. First and as a matter of statutory law, coverage is always required for the named peril, "Catastrophic Ground Cover Collapse." Second and for an additional premium, named peril coverage may be provided for "Sinkhole Loss." This structuring of the coverage may be complex and this particular policy formats the coverage in a confusing manner, but I see nothing in Florida law or public policy that currently prohibits a carrier from offering such coverage.

I concur in the decision that Citizens has the burden of proof in this case, not because the policy is an all-risk policy with an exclusion for sinkhole loss but rather because I believe this burden of proof is most compatible with the unique and complex claims adjusting procedures mandated by statute for such sinkhole claims in 2008. See § 627.707, Fla. Stat. (2008). I write to explain my reading of this insurance policy and

the shifting burdens of proof that it creates. I further explain why I conclude that the "efficient proximate cause" doctrine applies in this case. Finally, I suggest that Florida needs to try one more time to obtain an objective and reasonable statutory approach to sinkhole coverage that will adequately balance the needs of families, neighborhoods, and the insurance industry. The statutes need to be implemented in a standardized, plain-language insurance contract that includes duties of utmost good faith on the part of both the insurer and the insured.

## I.  THE POLICY

The policy in this case was issued for one year beginning in October 2008. Because I am not reprinting the entire policy as an appendix to this concurrence, this concurrence may be difficult for the reader to understand. For those who may wish to review the entire policy, the main form or the core contract for dwelling coverage was issued using a form identified as CIT DP-3 07 08. The endorsement addressing sinkhole loss coverage is identified as CIT 25 94 07 08.

A typical insurance contract contains a main form with separate endorsements as needed. These forms and endorsements are normally listed by number on the declarations page. The Citizens policy involved in this case is such a contract.

A typical main form for a homeowners insurance contract will have four or five major sections:  "Definitions," "Coverages," "Perils Insured Against," "Exclusions," and "Conditions." Coverage A in the "Coverages" section explains that the coverage will "apply" to the dwelling, but it does not explain the scope of the coverage.

The actual insuring agreement is normally stated in the "Perils Insured Against" section. This section normally provides for either named peril coverage or all-risk coverage. For example, a basic form homeowners policy, sometimes referred to as an HO-1 form, may list ten covered perils for which payment will be made if a loss occurs as a result of one or more of those perils. Similarly, a standard fire policy may provide coverage only for the named perils of fire and lightning. See N.Y. Ins. Law § 3404 (McKinney 2010). A named perils policy generally can be issued with fewer exclusions from coverage. By contrast, an all-risk policy or open peril policy will provide a broad agreement to cover all direct physical loss to the covered dwelling and then limit that coverage by a longer list of exclusions in the next section of the policy. The HO-3 broad form homeowners policy is an example of this type of coverage.

The Citizens policy in this case deviates from the traditional policy in its "Perils Insured Against" section in two respects. First, it attempts to provide both all-risk coverage and named peril coverage in successive paragraphs while making no effort to explain how they relate to one another. Second, Citizens has placed a large list of exclusions in the "Perils Insured Against" section, rather than placing them in the exclusions section.[1] Citizens does not expressly describe the exclusions as such. But neither the placement of the list nor its nomenclature alters the fact that these items are

---

[1]The "General Exclusions" section, which follows the "Perils Insured Against" section, contains exclusions that apply not only to Coverages A and B but also to the seventeen named perils included under Coverage C for personal property. I suspect that Citizens placed the list of exclusions in the "Perils Insured Against" section because these exclusions where intended to apply to Coverages A and B and not to Coverage C. At least from my perspective, the policy would be less confusing if the "General Exclusions" section were entitled "Exclusions" and contained one set of exclusions applicable to Coverages A and B and a second set of exclusions applicable to Coverages A, B, and C.

exclusions and that Citizens has the burden of proof when the coverage issue relates to one of these loss items.

With this attempt to explain the basic policy, let me shift to explain where the burden of proof rests on a claim either under the main form alone or under the main form as amended by the sinkhole loss endorsement.

A. <u>Burdens of Proof under the Main Form without the Sinkhole Endorsement</u>

Concerning Coverage A for the dwelling, the "Perils Insured Against" section of the policy begins with language that fits within the category of all-risk coverage: "We insure against risk of direct loss to property . . . only if that loss is a physical loss to property." Restated, it insures the homeowner for all risks that cause direct physical loss to property to the dwelling. Thus, in making a claim on this policy, the homeowner bears the initial burden to prove that such a direct physical loss has occurred.

Immediately below this insuring agreement, the policy adds: "This includes the peril of 'catastrophic ground cover collapse' as provided in Part A. below." This is an odd addition because it seemingly "includes" a named peril that is already included within an all-risk insuring agreement. Envisioned as a Venn diagram, the all-risk agreement is a big circle and the sinkhole-related named perils are smaller circles completely encircled by the big circle. It would be an odd definition of "catastrophic ground cover collapse" that was not already subsumed within the all-risk insuring agreement. Thus, the inclusion of the "catastrophic ground cover collapse" language at this point in the policy seems to add or change nothing about the all-risk insuring agreement.

- 10 -

Following the all-risk insuring agreement, the policy has a list beginning: "However, we do not insure loss:" The first loss not insured on this list is a loss "involving collapse. . . ." As explained above, the list is a list of exclusions. For example, the last item in the list identifies losses "excluded under General Exclusions." Within the "General Exclusions" section is exclusion (i), "[l]oss caused by 'sinkhole.' " Thus, in our hypothetical claim the homeowner first proves a direct physical loss and then it is Citizens' burden to prove that the loss fits within one or more of the losses listed as excluded losses.

Immediately following the list of exclusions in the "Perils Insured Against" section and still within that section of the policy, the policy contains "Part A."[2] This part provides the named peril insuring agreement for "Catastrophic Ground Cover Collapse." This named peril is not subject to the sinkhole exclusion in the General Exclusions.

Going back to our hypothetical claim: (1) the homeowner first proves a direct physical loss; (2) Citizens responds by proving an exclusion, most likely the sinkhole exclusion; and (3) if that exclusion is proven, then the homeowner must prove a claim that falls within the "Catastrophic Ground Cover Collapse" coverage because it is coverage for a named peril.

B. Burdens of Proof with the Sinkhole Loss Endorsement

The sinkhole loss coverage endorsement in this policy is not the type of endorsement that completely eliminates the front section of the policy and replaces it with the language of the endorsement. Instead, it adds additional language into the "Definitions," "Perils Insured Against," "General Exclusions," and "Conditions" in the

_____

[2]The policy does not seem to have a "Part B."

main form of the policy.  In the definitions, it defines "sinkhole activity" and then defines "sinkhole loss" as "actual physical damage caused by '[s]inkhole activity.' "[3]

The endorsement next adds language on "Sinkhole Loss" to the "Perils Insured Against."  This language does not remove the "Part A" "Catastrophic Ground Cover Collapse" provision and apparently adds sinkhole loss as another named peril immediately thereafter.[4]  The sinkhole exclusion in the General Exclusions is also limited so that it does not apply to the named peril coverage provided under this endorsement.  The endorsement does not amend the conditions of the policy to include the complex adjusting process required by section 627.707, but it does expressly add the sanction for a claim not made in good faith contained in section 627.707(7).

Returning once again to our hypothetical claim with the endorsement added:  (1) the homeowner proves a direct physical loss under the all-risk language in the main section; (2) Citizens responds by proving an exclusion, which may include the sinkhole exclusion; (3) if that exclusion is proven, then the homeowner must prove a claim that falls within the sinkhole loss coverage;[5] and finally (4) if the homeowner proves its sinkhole loss claim, then Citizens could conceivably raise one of the remaining general exclusions for which it would have the burden of proof.  For example, it might raise a "neglect" or "existing damage" exclusion.

---

[3]These definitions are similar to, but not verbatim from, section 627.706(2), Florida Statutes (2008).

[4]This addition is not titled "Part B," but perhaps that is Citizens' intent.

[5]In theory the homeowners could also prove a catastrophic ground cover collapse loss, but this is much harder to prove.  The reason an insured purchases the endorsement is to obtain the more favorable sinkhole loss coverage.

C.  The Apparent Situation in This Case

Examining the application of the four steps in the preceding paragraph to this case, it is doubtful that everyone is in agreement about the steps at issue in the trial.  The jury instruction given by the trial court that "the court has determined and now instructs you that the Plaintiffs have met their burden of proof that damage occurred to their home during the policy period," seems to be an instruction about the Salkeys' success on step one.  But the Salkeys seem to concede that their claim is for a sinkhole loss.  Thus, I believe that the issues at trial should begin with the Salkeys' claim for a sinkhole loss as a named peril and that the first two steps described above may not be material issues in this case.  The instruction the trial court gave explaining that the Salkeys were required to prove that their property experienced damages from a sinkhole seems correct under my analysis.

## II.  THE ROLE OF "EFFICIENT PROXIMATE CAUSE"
## UNDER SECTION 627.707

Although the claims adjusting procedures in section 627.707 are not incorporated into this insurance policy, they are mandatory steps that Citizens must take as a matter of law.  Thus, when the Salkeys made a claim for damage to their dwelling, Citizens apparently obeyed the statute and inspected the house and determined that it had physical damage to the structure that may have been the result of a sinkhole.  See § 627.707(1).  This determination triggered Citizens' obligation to hire the expert.  See § 627.707(2).  Thereafter, Citizens apparently determined that there was "no sinkhole loss" and denied the claim as authorized by statute.  See § 627.707(4).

Usually the decision to deny a sinkhole claim is made after an expert issues a "sinkhole report" as described in section 627.7073.  It is unlikely that this

- 13 -

statute was written by a scientist because the expert is given only two options: (1) that the sinkhole loss is "verified," or (2) that "sinkhole activity is eliminated as the cause of damage to the structure." See § 627.7073(1)(a), (b). The statute does not address situations in which a dwelling is damaged by a likely combination of sinkhole activity and another force.

Under section 627.707(4), Citizens is authorized to make a decision to "deny" a claim after the insured has fulfilled its out-of-court obligation to demonstrate that the dwelling had damage that may have been the result of a sinkhole. Given the initial burden on the insured to establish damage that appears consistent with a possible sinkhole, I conclude that the legislature intends to place the burden of proof concerning this denial on Citizens, comparable to the burden for an exclusion. My conclusion is buttressed by the fact that the policy provides both all-risk coverage and named peril coverage. A letter from Citizens to its insured denying a sinkhole claim pursuant to section 627.707(4) at least implicitly should explain: "We deny your claim because the damage is a collapse, settling, or shrinking (or some other loss) that is excluded from our all-risk insuring agreement and it also does not qualify as a sinkhole loss under that named peril." In this context, it seems to me that Citizens should have the burden of proof not only on the exclusion of coverage under the all-risk insuring agreement but also on the denial of sinkhole coverage under the statutory procedure. But its burden is not absolute. It does not need to prove that no damage whatsoever was caused by a sinkhole. This is where the "efficient proximate cause" doctrine becomes relevant. This doctrine essentially requires Citizens to prove that the alternative cause of the loss, a

loss excluded under the all-risk coverage, was the most substantial or responsible factor in the loss.

### III. THE NEED FOR AN OBJECTIVE, COMPREHENSIVE APPROACH TO SINKHOLES

I readily admit that this concurrence is difficult to read. So are Citizens' insurance policies, the statutes applicable to sinkhole losses, and most of the case law from courts attempting to explain this area of law. Sinkholes are a real and growing problem for property owners, especially in the middle region of Florida. All property owners, but especially families with homesteads, need to spread the risk of sinkhole loss by the mechanism of insurance. The families who live in neighborhoods affected by sinkholes or who are thinking of buying a home in such a neighborhood need a level of assurance that their neighbors will not take cash from an insurance company and leave the neighborhood with sinkhole blight. Insurance companies need to understand factually what circumstances will be covered as sinkhole losses, the likely frequency of such losses in the future, the acceptable or expected methods to remedy these losses, and the anticipated cost of the typical remedy so that policies can be underwritten for a reasonable premium and without undue risk that the insurance carrier will suffer severe losses or insolvency due to this coverage.

These goals can be achieved, but admittedly they can be achieved only by statutes written to accomplish a delicate balance of competing factors. This will require the objective input of true experts in several fields. In the last decade, the handling of these claims in this court has revealed a growing and sometimes bitter adversarial rift between the insurance companies and their insureds. Neither side trusts the other. Working together to resolve a claim in mutual good faith seems to have become an

- 15 -

ideal of the past. Both in the courts and in the legislative process the necessity to achieve these goals has been supplanted by economic gamesmanship that ultimately will not serve the homeowners, the neighborhoods, or the insurance industry as a whole. The courts cannot offer a forum for this objective and comprehensive approach to the issue of sinkholes, but the other two branches of government could create an effective forum.